STATE OF CONNECTICUT *v.* NORBERTO RIVERA
(14098)

PETERS, C. J., CALLAHAN, COVELLO, BORDEN and BERDON, Js.

Argued September 26—decision released November 19, 1991

*Richard S. Cramer,* for the appellant (defendant).

*Paul J. Ferencek,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Herbert Carlson, Jr.,* for the appellee (state).

COVELLO, J. This is the defendant's appeal from his conviction of one count of murder in violation of General Statutes § 53a-54a (a), one count of criminal attempt to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-49 (a) (2), and one count of assault in the first degree in violation of General Stat-

utes § 53a-59 (a) (1).[1] The issues on appeal are: (1) whether the defendant proved a witness unavailable to testify so that the witness' alleged declaration against penal interest should have been admitted into evidence as an exception to the hearsay rule; and (2) whether statements made by the defendant to sisters of the assault victim after the shootings constitute admissions of a party opponent. In both instances we affirm the judgment of the trial court.

The jury might reasonably have found the following facts. Javier Mautino, the assault victim, is the brother of the defendant's former girlfriend, Maria Ortiz. After Ortiz ended their relationship in 1984, the defendant remained angry at her and blamed her family for interfering with their romance. On February 3, 1987, in a taped telephone conversation with Ortiz, the defend-

---

[1] General Statutes § 53a-54a (a) provides: "MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

General Statutes § 53a-49 (a) (2) provides: "CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

General Statutes § 53a-59 (a) (1) provides: "ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."

ant threatened to kill her brother, Mautino. In June, 1988, shortly before the incident underlying the defendant's conviction, the defendant placed several telephone calls to Ortiz' sister, Sonia Fraser, telling her that he planned to kill Mautino.

On the evening of July 1, 1988, Mautino and Fernando Fuentes, the murder victim, were at the Peruvian Club in Hartford. The defendant, who was also present, argued with Mautino and challenged him to a fight outside. Mautino declined and the defendant, calling him a coward, departed. When Mautino and Fuentes left shortly thereafter, the defendant who had remained outside the club, shot both men. Fuentes died from his wounds and Mautino, although surviving the assault, died from cancer before the trial.

On July 13, 1990, a jury rendered a guilty verdict on all counts. The trial court sentenced the defendant to three terms of imprisonment: fifty years for the first count of murder; twenty years for the second count of attempted murder; and twenty years for the third count of assault in the first degree. The second and third counts were to run concurrently and both were to run consecutively with the first count for a total effective sentence of seventy years.

I

The defendant first claims that declarations by a third party, Hernan Vieira, Jr., to the defendant's nephew, Jose Rivera, should have been admitted into evidence as declarations against Vieira's penal interest. In an offer of proof made outside the presence of the jury, the defendant elicited testimony from Rivera concerning Vieira's statements. Rivera testified that in December, 1989, approximately eighteen months after the shooting, he saw Vieira in Connell's Cafe in Hartford. Vieira approached him and inquired about Rivera's uncle, the defendant. After Rivera informed him that

the defendant was in jail, Vieira allegedly said, "Everything happened too fast. I had to do what I had to do to protect your uncle's life." Defense counsel, maintaining that Vieira was unavailable, sought to introduce Vieira's statements through Rivera to exculpate the defendant. The state objected on the ground that the defendant had not proven that Vieira was unavailable.

In any analysis of the admissibility of a declaration against penal interest, one must *first* determine whether the declarant is unavailable; if, and only if, this is shown by the proponent of the proffered hearsay statement will the court proceed to examinations of trustworthiness. *State* v. *DeFreitas,* 179 Conn. 431, 441–43, 426 A.2d 799 (1980); see also *State* v. *Frye,* 182 Conn. 476, 480–81, 438 A.2d 735 (1980). In *Frye,* we recognized five of the most common situations in which the declarant will be deemed unavailable for the purposes of certain hearsay exceptions.[2] The only situation relevant here is when the declarant is " 'absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process *or other reasonable means.*' " (Emphasis omitted; emphasis in original.) *State* v. *Frye,* supra, 481. In interpreting "reasonable means," we have held that the proponent must exercise due diligence and, at a minimum, make a good faith effort to procure the declarant's attendance. *State* v. *Aillon,* 202 Conn. 385, 391, 392, 521 A.2d 555 (1987),

---

[2] " 'Unavailability as a witness includes situations in which the declarant—(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or (2) persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or (3) testifies to a lack of memory of the subject matter of his statement; or (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or (5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . [or testimony] by process or other reasonable means. . . .' " *State* v. *Frye,* 182 Conn. 476, 481–82 n.3, 438 A.2d 735 (1980).

citing *State* v. *Weinrib,* 140 Conn. 247, 252, 99 A.2d 145 (1953), and *State* v. *DeFreitas,* supra, 445. The trial court has broad discretion in determining whether the proponent has shown a declarant to be unavailable. "Only upon a showing of a clear abuse of discretion will this court set aside on appeal rulings on evidentiary matters." *Dunham* v. *Dunham,* 204 Conn. 303, 324, 528 A.2d 1123 (1987).

To prove that Vieira was unavailable, the defendant called Donald Gates, an investigator. Gates testified outside the presence of the jury about his continuing, but unsuccessful, attempts to locate Vieira. In January, 1990, he first learned of Vieira's possible whereabouts when Rivera informed him that he had spoken to Vieira in Connell's Cafe in Hartford. Thereafter, Gates checked for him on the streets and several times at the wrong bar, the Cardinal Cafe in Hartford. In addition, Gates asked Rivera and his family to report to him if they saw Vieira. On June 29, 1990, after the trial had begun, a courtroom spectator, Carmen Feliciano, told Gates that her son had seen Vieira recently on Zion Street in Hartford and that her son believed that Vieira lived on Park Terrace. Gates gave her his card and asked her to have her son call him over the weekend. On June 30, 1990, after waiting in vain for a phone call from Feliciano's son, Gates looked around the Zion Street/Park Terrace area for about one hour to no avail.

On July 3, 1990, Gates testified that just that morning he had contacted Vieira's father, Hernan Vieira, Sr., at 294 Park Terrace through a lead originally obtained from the Hartford Housing Authority. Gates admitted that the name "Hernan Vieira" was on the mailbox. Vieira, Sr., told Gates that his son lived in the Park Street neighborhood and that he thought that his son was attending a driving school in the Enfield area. On July 5, 1990, Gates testified that upon revisiting

Vieira, Sr., on July 3, 1990, he obtained Vieira's date of birth and a description of his car. Gates then called five driving schools in Enfield, but none of them had a student named Hernan Vieira. A sixth school, the New England Tractor Trailer School in Enfield, informed Gates that he would need a subpoena to obtain any information about students and that it would take at least two days to process such a request. Gates obtained and served a subpoena on the school and looked there for Vieira and a car matching the description of his automobile. Gates further testified that by July 5, 1990, his last day of testimony, the school had not complied with his subpoena.

The trial court concluded that the defendant had failed to meet his burden of showing that Vieira was unavailable and concluded, therefore, that the hearsay statements made to Rivera should not be admitted into evidence as a declaration against penal interest. The trial court concluded that the defendant's efforts were simply a case of too little, too late. Among the reasons cited by the trial court were: (1) pertinent information, especially Vieira's date of birth, was available well before trial; had such information been obtained in a timely manner, the defendant would have had earlier access to sources useful in determining the declarant's whereabouts, e.g., the department of motor vehicle records; (2) others had seen Vieira on recent occasions; (3) Vieira presently attended a driving school in the Enfield area; (4) Vieira, Sr.'s name had always been on his mailbox and could have been discovered earlier by simply checking with the postal authorities; (5) Gates checked the wrong bar; (6) no one interviewed Vieira's alleged girlfriend, Luz Gonzalez, who was available; and (7) the police had not been asked for assistance and might have been quite willing to cooperate in this search since they wanted Vieira on an assault charge and he was, according to the testimony of two defense witnesses, a possible murder suspect.

Since the record here adequately reflects a complete examination of the circumstances surrounding Gates' investigation and since the trial court fully articulated the numerous relevant reasons that supported its ultimate conclusion that Vieira had not been proven unavailable to testify, we conclude the trial court did not abuse its broad discretion in this instance.

## II

The defendant next claims that statements he made subsequent to the shootings to sisters of Mautino, the assault victim, were improperly admitted into evidence as admissions of a party opponent. After an offer of proof was made outside the presence of the jury, the trial court determined that the statements were admissions and allowed Laura Rosario and Sonia Fraser, sisters of Mautino, to testify as to the content of telephone conversations they had with the defendant after the shootings. Rosario testified that approximately two weeks after the July 2, 1988 incident, the defendant telephoned her and said, "You know me. I already killed one, and tonight, you are going to see the rest." After Rosario expressed confusion as to what he meant, the defendant explained, "I am going to blow up your business tonight." Fraser testified that the defendant telephoned her approximately twelve times after the incident saying, inter alia, "I shot your brother. I am going to kill your brother. I am going to finish with your brother. I am going to get your sister. I am going to get the whole family." He also told her that he had only "started what he planned to do." On another occasion the defendant told her that, next time, he would shoot her brother "in the head," and that he had to do it because Mautino was the only witness.

The defendant maintains that the trial court abused its discretion in admitting these statements because their prejudicial effect outweighed their probative value

and they were only peripherally and tangentially related to the defendant's state of mind when the shootings occurred. The defendant does not challenge the admissibility of those parts of his statements to the witnesses wherein he admitted shooting and killing Fuentes and shooting Mautino. He claims, however, that his statements regarding his intent to kill the rest of the family should have been excluded. We disagree.

"Among the recognized exceptions to the hearsay exclusionary rule is that for admissions of a party." *State* v. *Stepney,* 191 Conn. 233, 250, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984), citing *State* v. *DeMatteo,* 186 Conn. 696, 702, 443 A.2d 915 (1982); C. Tait & J. Laplante, Connecticut Evidence (2d Ed. 1988) § 11.5, p. 330; C. McCormick, Evidence (3d Ed. 1984) § 262, pp. 774–75. "[S]tatements made out of court by a party-opponent are universally deemed admissible, when offered against him"; 4 J. Wigmore, Evidence (Chadbourn Rev. 1972) § 1048, p. 2; when they are relevant and material to the case. *State* v. *Stepney,* supra, 251. "Statements after the act, stating the past intent or motive at the time of the act," as well as "subsequent statements predicating a then existing state of mind are properly admissible" as admissions. (Emphasis omitted.) 6 J. Wigmore, Evidence (Chadbourn Rev. 1976) § 1732, p. 161. "In both cases the object is to ascertain [the defendant's] subsequent state of mind, and thence to infer . . . his state of mind at the time of the act." Id., pp. 161–62.

It is clear that these statements are relevant and material to the issues in this case since the jury might reasonably have inferred from their content that they manifested the defendant's conscious and continuing resolve to do away with Mautino's entire family. It is reasonable to assume that the jury would find these

statements highly probative as they tended to show the defendant's intent and motive at the time of the shootings. Moreover, while these statements tend to incriminate the defendant, that, in and of itself, does not imply that they are legally prejudicial. "Evidence is not prejudicial . . . merely because it tends to incriminate a defendant. See *State* v. *DeMatteo*, supra, 702–703; see also *United States* v. *Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980). The prejudicial effect that the rules of evidence are designed to alleviate is that which 'results from an aspect of the evidence other than its tendency to make the existence of a material fact more or less probable, e.g., that aspect of the evidence which makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.' *United States* v. *Bailleaux*, 685 F.2d 1105, 1111 (9th Cir. 1982); see *State* v. *DeMatteo*, supra, 703. The trial court's discretionary determination that the probative value of evidence is not outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. *State* v. *King*, 216 Conn. 585, 603, 583 A.2d 896 (1990)." *State* v. *Joly*, 219 Conn. 234, 253, 593 A.2d 96 (1991).

Contrary to the defendant's assertion, the trial court did balance any prejudicial effect against the probative value when it determined that these statements should be admitted into evidence. In finding that the statements were not too prejudicial, the trial court stated that such threats were not "of such a heinous nature that it would prevent the jury from being objective, fair and impartial." In addition, the trial court, in explaining why this evidence was important to the issue at hand, stated that: (1) the death of the witness Mautino before trial rendered these statements even more

probative because of the "paucity of any eyewitness identification"; and (2) in light of the defendant's previously admitted threats against Ortiz and Mautino, which occurred before the shootings, these postincident threats were highly relevant. We see these findings as fact specific, logical and relevant to the issue confronting the trial court. Accordingly, we find no abuse of discretion in the trial court's ultimate conclusion to admit the statements.

The judgment is affirmed.

In this opinion the other justices concurred.