## STATE OF CONNECTICUT *v.* JOSE RIVERA
### (14080)

PETERS, C. J., GLASS, COVELLO, BORDEN and SANTANIELLO, Js.

Argued November 5, 1991—decision released January 28, 1992

*Elizabeth M. Inkster,* assistant public defender, with whom, on the brief, were *G. Douglas Nash,* public defender, and *Temmy Ann Pieszak,* assistant public defender, for the appellant (defendant).

*James A. Killen,* assistant state's attorney, with whom were *John M. Bailey,* state's attorney, and, on the brief, *Warren Maxwell,* assistant state's attorney, for the appellee (state).

COVELLO, J. This is the defendant's appeal from his conviction of murder in violation of General Statutes § 53a-54a.[1] The issues on appeal are whether the trial court improperly: (1) admitted the hearsay testimony of two witnesses who were unavailable to testify; (2) excluded an alleged declaration against penal interest for lack of trustworthiness; (3) admitted evidence of the defendant's prior felony conviction for possession of narcotics; and (4) failed to instruct the jury that, if it were to reject the defendant's claim of self-defense, it must be unanimous in its decision as to why it was rejecting that defense. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. In the early evening of August 9, 1988, the victim, Luis Villafane, and a male companion approached the defendant, Jose Rivera, and his brothers, Heriberto

[1] General Statutes § 53a-54a provides: "MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

Santiago (Heriberto), Luis Santiago (Luis), and Ernesto Santiago (Ernesto), who were all sitting on the steps outside of their home at 1064 Broad Street in Hartford. Villafane, who was holding a metal pipe, accused Ernesto of cheating him in a drug deal earlier that day by selling him bags of sugar instead of drugs. As tensions mounted, Luis went into the house and came back with a sawed-off rifle that he gave to the defendant. The defendant and his brothers then chased the victim and his friend across the street to an alley. When the victim attempted to strike the defendant with the metal pipe, the defendant shot and killed him. The defendant and the witnesses who had viewed the incident testified that the defendant, and no one else, had fired the rifle four or five times and had shot the victim. The autopsy report indicated that the victim had been shot only once. On October 19, 1989, the jury rendered a verdict of guilty of murder and not guilty of conspiracy to commit murder. The trial court sentenced the defendant to a term of fifty years imprisonment.

I

The defendant first claims that the admission at trial of the probable cause testimony of two state's witnesses, Maria Colon and Heriberto Santiago, violated his constitutional rights to present a defense, confront and cross-examine witnesses and to due process of law. The defendant claims that the trial court improperly determined that: (1) the state had demonstrated the witnesses' unavailability to testify at trial; and (2) their testimony was reliable. *State* v. *Outlaw,* 216 Conn. 492, 505, 582 A.2d 751 (1990).

At the probable cause hearing, Colon testified that, on the evening of the shooting, she had been sitting outside when she heard some yelling. She then saw the defendant, who was carrying a rifle, and "the boys" chase the victim, who was holding a "stick or some-

thing like that," across the street, at which point, the defendant shot the victim. Heriberto testified about the initial confrontation among the victim, the defendant and his brothers, and the subsequent chase. He also testified that while the defendant was holding the victim's companion at gunpoint, the victim had approached the defendant from behind and hit him in the arm with a pipe. It was only then, Heriberto testified, that the defendant shot the victim. Concluding that the two prong test for admissibility of prior testimony had been met, the court allowed a transcript of Maria Colon's and Heriberto Santiago's probable cause hearing testimony to be read to the jury.

"[T]his court and the United States Supreme Court have declared that prior testimony of an *unavailable* witness is admissible in a subsequent trial as an exception to the hearsay rule. *Ohio* v. *Roberts,* 448 U.S. 56, 67, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980); *California* v. *Green,* 399 U.S. 149, 165, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970); *State* v. *Parker,* 161 Conn. 500, 503–504, 289 A.2d 894 (1971)." (Emphasis added.) *State* v. *Torres,* 210 Conn. 631, 645–46, 556 A.2d 1013 (1989). The two part test for the admissibility of such testimony is as follows: " 'First . . . [t]he prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.' [*Ohio* v. *Roberts,* supra,] 65. Even after the declarant is satisfactorily shown to be unavailable, 'his statement is admissible only if it bears adequate "indicia of reliability" '; id., 66; which serve to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement.' *California* v. *Green,* [supra, 160–61]." *State* v. *Outlaw,* 505.

In *State* v. *Frye,* 182 Conn. 476, 480–81, 438 A.2d 735 (1980), we identified five of the most common situations in which the declarant will be deemed unavail-

able for the purposes of certain hearsay exceptions.[2] The situation relevant here states: the declarant is " 'absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . *by process or other reasonable means.*' " (Emphasis added.) Id., 481. "In interpreting 'reasonable means,' we have held that the proponent must exercise due diligence and, at a minimum, make a good faith effort to procure the declarant's attendance. *State* v. *Aillon,* 202 Conn. 385, 391, 392, 521 A.2d 555 (1987), citing *State* v. *Weinrib,* 140 Conn. 247, 252, 99 A.2d 145 (1953), and *State* v. *DeFreitas,* [179 Conn. 431, 445, 426 A.2d 799 (1980)]. The trial court has broad discretion in determining whether the proponent has shown a declarant to be unavailable. 'Only upon a showing of a clear abuse of discretion will this court set aside on appeal rulings on evidentiary matters.' *Dunham* v. *Dunham,* 204 Conn. 303, 324, 528 A.2d 1123 (1987)." *State* v. *Rivera,* 220 Conn. 408, 411–12, 599 A.2d 1060 (1991).

At a hearing held the week before trial commenced, the state called Steven Oborski, an inspector for the Hartford state's attorney's office, to prove that Maria Colon and Heriberto Santiago were unavailable. Oborski testified as to his continuing, but unsuccessful, efforts to locate both witnesses. Oborski knew that Colon had resided at 1064 Broad Street in Hartford because he had served her with a subpoena for her

---

[2] "Unavailability as a witness includes situations in which the declarant—(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or (2) persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or (3) testifies to a lack of memory of the subject matter of his statement; or (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or (5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . [or testimony] by process or other reasonable means." *State* v. *Frye,* 182 Conn. 476, 481–82 n.3, 438 A.2d 735 (1980).

attendance at the September 30, 1988 probable cause hearing. After that hearing, Oborski gave Colon his "card and other information" and asked her to "stay in touch" if there was any change in her address or whereabouts. In July, 1989, he worked on the case and testified that, around that time, he heard an "unsubstantiated rumor" that Colon had left the area. Oborski testified that he prepared a subpoena to serve on Colon but when he went to her old address, "close to jury selection time," the building superintendent informed him that she had moved to Puerto Rico with her children sometime in 1988. Colon left no forwarding address and Oborski was not able to obtain any information through police records, motor vehicle records, license and registration records or telephone company records. Oborski discovered Colon's mother's address in Hartford but upon arriving, former neighbors also informed him that she had moved to Puerto Rico.

After attempting to trace Colon through other relatives and friends, Oborski located her brother, Samuel Colon, in Hartford. He said that his mother and Colon lived in Guayamus, Puerto Rico, in a section of the city called Pointe Dehobo. Oborski attempted to telephone the Commonwealth of Puerto Rico police department on September 20 and 21, 1989, but was unsuccessful because telephone service was inoperative due to a hurricane. On September 22, 1989, he telephoned Major Tabia, the commander of criminal affairs and extradition for Puerto Rico, who replied that, without more information, he would not be able to help locate Colon. On the same day, Oborski also contacted Commandante Benito Cruz Lopes and Officer Antonio Rodrigues Colon of the Guayamus police department by telephone and sent them a "follow-up" letter. He informed them that the state wanted Colon's testimony for an imminent trial and requested their aid in locating Colon. The

Guayamus police officials told him that they would try to find her and notify her to contact the state's attorney's office. Oborski and the state's attorney prepared an interstate subpoena to be used in the event that the authorities were able to locate Colon, but as of the September 28, 1989 hearing date, the Puerto Rican police authorities had not provided any further information, nor had Colon contacted Oborski. Oborski testified that he was not sure that Colon was even in Guayamus because her brother said that he had not stayed in contact with her.

The next day, Oborski contacted personnel at the Connecticut department of income maintenance to see if they had Colon's new address but they informed him that, even if Colon were a recipient of state assistance, the agency would not be permitted to release any information to him. Nevertheless, Oborski determined that a federal statute might authorize access to financial assistance records in Puerto Rico, and he called the Puerto Rican Aid to Families with Dependent Children program (AFDC). Personnel there said that they would be willing to help locate Colon, but since "Colon" was an extremely common name they would need, at a minimum, her father's full name to narrow the search, and, ideally, a social security number to pinpoint the investigation. Oborski testified that he completed approximately twenty-five computer checks of correctional and other records in an unsuccessful attempt to locate Colon's social security number. Oborski also contacted Steven Reardon of the United States Department of Labor who found approximately fifteen "Maria Colons," none of whom was the witness in question.

With respect to Heriberto Santiago, Oborski testified that, at the time of the probable cause hearing, Heriberto was at the Cheshire correctional facility. When the prison discharged Heriberto, he gave the address of his brother, Angel Santiago (Angel), as his

own, but, according to Angel, his brother never lived there after his discharge. Angel believed that Heriberto lived somewhere in Holyoke or Chicopee, Massachusetts. The Chicopee police told Oborski that the Holyoke police department had an outstanding burglary arrest warrant for Heriberto. On September 25, 1989, Oborski told the Holyoke police that the Hartford state's attorney's office wanted to serve an interstate subpoena on Heriberto if the Holyoke authorities were successful in locating him. He also requested that they go to the address listed on the warrant to serve Heriberto with it. He called the Holyoke police the next day and they informed him that they could not locate Heriberto at the given address. Oborski left his name and other information with the Holyoke police along with a request that they notify him if they apprehended Heriberto.

On the second day of the hearing, September 29, 1989, Oborski testified that he had discovered Heriberto's six aliases and six dates of birth and his FBI number, none of which had helped locate him. He testified that his National Crime Information Center (NCIC) search throughout the entire United States produced no criminal records outside of Connecticut.[3] Oborski also reported that, using all of the aliases and birth dates, he had searched the New England, New York and New Jersey area in a national law enforcement computer system to no avail for motor vehicle and registration information.

The trial court subsequently declared both Maria Colon and Heriberto Santiago "unavailable" and ruled that their testimony at the probable cause hearing had sufficient "indicia of reliability" to be admissible as evidence. As to the issue of unavailability, the trial court,

---

[3] NCIC records did not include the Massachusetts burglary warrant because NCIC did not consider it an extraditable felony.

relying upon Oborski's testimony concerning his extensive efforts, determined that the state had exercised reasonable due diligence. As to the reliability of the probable cause hearing testimony, the trial court concluded that because of the administration of an oath, the solemnity of the hearing, the opportunity for cross-examination, the accuracy of the reproduction of the words spoken and, in general, identical safeguards to ensure reliability and trustworthiness as testimony given at a full trial, this prior testimony had sufficient indicia of reliability.

On appeal, the defendant claims that the trial court improperly determined that the state had demonstrated that Maria Colon and Heriberto Santiago were unavailable, and that their prior testimony was reliable. The defendant argues that the state should not profit from its own negligence by starting its search so close to trial and that its tardiness contributed to the fact that the witnesses were found to be unavailable. To support this proposition, the defendant cites *Motes* v. *United States,* 178 U.S. 458, 20 S. Ct. 993, 44 L. Ed. 1150 (1900) (witness' absence due to negligence of state where state allowed witness, who was prisoner, to stay in hotel largely unguarded, and witness escapes), and *United States* v. *Quinn,* 901 F.2d 522 (6th Cir. 1990).

In *Quinn,* despite a full month's notice of the trial date and knowledge that a five day lead time is generally required by the United States Marshal's Office, the government did not deliver a subpoena to the office until two working days before the trial. Id., 528. Then, upon finding no one at the witness' address and being informed by a neighbor that she had moved a month earlier, the marshal did nothing further until the trial commenced. The night after the first day of trial, the marshal drove by the house of the witness' mother but left after he did not see the witness' car. The marshal then called the witness' mother the next day. She told

him that the witness was " 'in and out of the house,' " and would be home that evening. The court refused to consider this "singularly unenthusiastic" effort to locate the witness to be due diligence, noting the failure to check any records, other relatives, or possible employers, despite evidence that the witness was employed. Id.

We are not persuaded that either of these cases are analogous to the facts presented here. Unlike *Motes* v. *United States,* supra, the state never had custody of either witness for purposes of their appearance at trial and the state did not cause the witnesses' unavailability. In contrast to *Quinn,* the state's efforts to locate the witnesses in this case began earlier and far surpassed those found in *Quinn.* While we agree with the defendant's argument that the state should have contacted Colon's brother, Samuel Colon, to obtain their father's full name in order to help search for her name in the Puerto Rican AFDC program, we note that this would not necessarily have found her but would only have narrowed the investigation for this very common name. Furthermore, there never was any proof that Colon, in fact, received any such assistance. Moreover, the question of whether an effort to locate a missing witness has been sufficiently diligent to declare that person "unavailable" is one that is inherently fact specific and always vulnerable to criticism, due to the fact that "[o]ne, in hindsight, may always think of other things." *Ohio* v. *Roberts,* supra, 75. Benefited, as we are, with this hindsight, we nevertheless refuse to condemn the state's efforts when, as here, they far surpassed those that occurred in the cases relied upon by the defendant.

As to the reliability of the testimony, the defendant claims that since the police eventually found the murder weapon in Colon's apartment, she had a strong motive to shift the blame onto the defendant. The

defendant also argues that Heriberto's testimony was unreliable because: (1) Heriberto was inconsistent as to which brother went into the house to retrieve the murder weapon; and (2) in other testimony, Heriberto had implicated himself as the one who discharged a weapon.

"[T]he testimony given at a probable cause hearing has the identical safeguards to insure reliability and trustworthiness as the testimony given at the trial." *State* v. *Parker,* 161 Conn. 500, 503, 289 A.2d 894 (1971); see also *State* v. *Outlaw,* supra, 503. Because the state granted Colon immunity from prosecution in connection with hiding the weapon, we disagree with the defendant's contention that Colon's testimony was unreliable and untrustworthy.[4]

Thus, any motives for her lying were thereby neutralized. As to Heriberto, we also disagree. In Heriberto's probable cause hearing testimony, he essentially corroborated the defendant's claim by testifying that the defendant alone shot the victim in self-defense. Further, his "inconsistencies" as to which brother retrieved the gun from the house, were, by agreement of the parties, never read to the jury.

We conclude that the trial court did not abuse its broad discretion in either determination.

## II

The defendant next claims that the trial court improperly ruled that Heriberto's out-of-court declaration against penal interest lacked sufficient trustworthiness to be admissible. In an offer of proof before trial commenced, Heriberto's brother, Angel, testified that approximately two weeks after Heriberto's release

---

[4] Colon, who may have been assisting the defendant by hiding the murder weapon in her apartment, faced a potential charge of hindering prosecution.

from prison, he arrived at Angel's house crying. Angel testified that, in response to his inquiry as to why he was crying, Heriberto stated that he "felt very bad because when the problem happened he run toward the boy. He had a small gun, like this. That he shot the guy and thought he killed him. And he was afraid." The trial court ruled that this evidence lacked the requisite trustworthiness to be admitted before the jury.

"A *trustworthy* third party statement exculpatory of the accused and against the penal interest of the declarant is admissible at the trial of the accused if the declarant is unavailable." (Emphasis in original.) *State v. Rosado,* 218 Conn. 239, 243–44, 588 A.2d 1066 (1991). For the purposes of this analysis, although he earlier claimed to the contrary, the defendant argues, consistent with the state's position, that Heriberto was unavailable. The remaining question as to whether the statements were sufficiently trustworthy is a decision within the sound discretion of the trial court. Id. Three relevant considerations[5] when examining the trustworthiness of declarations against penal interest are: "(1) the time of the declaration and the party to whom the declaration was made; (2) the existence of corroborating evidence in the case; and (3) the extent to which the declaration is really against the declarant's penal interest." *United States v. Guillette,* 547 F.2d 743,

[5] *United States v. Guillette,* 547 F.2d 743, 754 (2d Cir. 1976), cert. denied, 434 U.S. 839, 98 S. Ct. 132, 54 L. Ed. 2d 102 (1977), *Chambers v. Mississippi,* 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973), the seminal case on this issue, and many of our previous decisions, have included a fourth factor: the availability of the declarant as a witness. Because *Chambers* predated, by two years, the passage of rule 804 (b) (3) of the Federal Rules of Evidence, which expressly required that the declarant be unavailable for declarations against penal interest to be admissible, this fourth requirement had relevance. Because we also require the unavailability of the declarant as a prerequisite to any examination of the trustworthiness of his statements; *State v. Rivera,* 220 Conn. 408, 411, 599 A.2d 1060 (1991); an analysis of availability as a factor for determining trustworthiness, after unavailability has already been determined, is superfluous and confusing.

754 (2d Cir. 1976), cert. denied, 434 U.S. 839, 98 S. Ct. 132, 54 L. Ed. 2d 102 (1977). As to the third consideration, the state concedes that Santiago's statement, if actually made, would have been against his penal interest.

The defendant argues that the statement is trustworthy and satisfies the remaining two prongs of the test because: (1) Heriberto confessed to his own brother within two weeks of his release from prison; and (2) there was sufficient corroborating evidence to support the trustworthiness of the statement. We disagree.

First, the time the declarations were made and also, to a lesser extent, the party to whom they were made, weigh against their reliability. The lateness of the declaration, approximately seven months after the shooting, even if soon after Heriberto's release, militates against its trustworthiness.[6] Furthermore, there is no evidence that Heriberto ever repeated this story to anyone else and, most significantly, he testified at the probable cause hearing that it was the defendant who had shot the victim. See *State* v. *Mayette,* 204 Conn. 571, 578, 529 A.2d 673 (1987) (delay combined with lack of reiteration of confession vitiates reliability). Further, "the witness testifying as to the statement must be one in whom the declarant would naturally confide." *State* v. *Hernandez,* 204 Conn. 377, 392, 528 A.2d 794 (1987). There must be a relationship in which the two parties to the conversation had a close and confidential relationship. *State* v. *Sanchez,* 200 Conn. 721, 726, 513 A.2d 653 (1986). The sibling relationship here could ordinarily fulfill these requirements but there was evidence that Heriberto did not get along well with his other brothers, except for Ernesto; that Angel and Heriberto did not

[6] The record does not reflect how long after the August 9, 1988 shooting Heriberto's incarceration began, although he was incarcerated by the time of the September 30, 1988 probable cause hearing.

grow up together; and that Heriberto had burglarized Angel's apartment. While this evidence may not rise to the level of completely negating the natural assumptions given to a sibling relationship, this element of the test is not helpful to the defendant in meeting his burden.

Second, and most damaging, the minimal amount and speculative nature of the defendant's proffered corroborative evidence fails to ensure trustworthiness. "The corroboration requirement for the admission of a third party statement against penal interest is significant and goes beyond minimal corroboration. Third party statements exculpating an accused are suspect and the requirement of corroboration, to effectuate its purpose of circumventing fabrication, must be construed as requiring corroborating circumstances that clearly indicate the trustworthiness of the proffered statement." *State* v. *Rosado,* 218 Conn. 239, 249, 588 A.2d 1066 (1991). The defendant's corroborative evidence rests on two facts. First, the police found only four shell casings at the scene and one witness thought he heard five shots, thus raising the inference that there was a second weapon involved that was fired by Heriberto. Second, the slug removed from the victim could not be definitively linked to the weapon allegedly fired by the defendant because of the bullet's damaged condition, thereby suggesting that a second weapon could conceivably have been involved. These facts do not constitute significant corroboration because there is no direct evidence whatsoever, other than Heriberto's alleged remarks, that more than one gun was fired or that anyone except the defendant fired the gun. Given the speculative nature of the evidence presented to support the trustworthiness of Heriberto's statement, we are unable to conclude that the trial court abused its broad discretion in this matter.

## III

The defendant next claims that the trial court improperly admitted into evidence the nature of his prior felony conviction for possession of narcotics. He argues that because the trial court should only have allowed the state to refer to the conviction as an unspecified felony, his conviction must be reversed. We disagree.

Prior to testifying on his own behalf, the defendant filed a motion in limine to preclude the prosecution from introducing evidence of the defendant's March 1, 1988 felony conviction for possession of narcotics. The trial court denied the motion, ruling that the prejudicial effect of the evidence did not outweigh its probative value. After this ruling, defense counsel elicited from the defendant upon direct examination that he had a prior felony conviction for possession of narcotics. Once the defendant had admitted the felony conviction, the trial court interrupted to explain to the jury that their "consideration of that prior conviction of a crime is admitted at trial only for the purpose of weighing and affecting the witness' credibility and for no other purpose." The trial court gave a similar instruction during its final charge to the jury.

"As a general rule, evidence of guilt of other crimes is inadmissible to prove that a defendant is guilty of the crime charged against him." *State* v. *Sierra,* 213 Conn. 422, 428, 568 A.2d 448 (1990), quoting *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982). The trial court, however, "may allow the state to mention specific prior convictions as evidence of a defendant's credibility provided such convictions carry a penalty of more than one year in prison and provided that their prejudicial effect does not far outweigh their probative value." *State* v. *Geyer,* 194 Conn. 1, 16, 480 A.2d 489 (1984). The trial court has wide discretion in this balanc-

ing determination and " 'every reasonable presumption should be given in favor of the correctness of the court's ruling . . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done.' " *State* v. *Carr,* 172 Conn. 458, 464, 374 A.2d 1107 (1977).

"Three factors should be examined to determine whether a prior criminal conviction . . . has been [properly] admitted: (1) the extent to which admission is likely to prejudice the defendant's cause; (2) the significance of the prior crime as bearing on the defendant's truthfulness; and (3) the remoteness in time of the prior conviction." *State* v. *Geyer,* supra, 11; see also C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 7.21.6. Since neither party disputes that the prior conviction occurred only five months before the shooting, the third prong of the test, which looks upon older convictions with less favor, is clearly satisfied. *State* v. *Nardini,* 187 Conn. 513, 525, 447 A.2d 396 (1982).

"As to the first criterion, a high degree of prejudice can be expected when the prior crime is quite similar to the crime charged because of the jury's tendency to believe that 'if he did it before, he probably did it again.' *State* v. *Carter,* [189 Conn. 631, 644, 458 A.2d 379 (1983)]." C. Tait & J. LaPlante, supra, § 7.21.6, p. 199. While the crime at issue arose in the context of a soured drug transaction, the gravamen of the defendant's claim is self-defense, not an outright denial of the shooting. Notwithstanding the lack of similarity between the crimes of possession of narcotics and murder, the defendant claims that the mere mention of a prior drug-related offense is enough to cause unacceptable prejudice. While we agree that evidence of a prior narcotics felony conviction is certainly prejudicial to the defend-

ant, evidence of any felony conviction is equally prejudicial. This generic prejudice is insufficient to render the disclosure of his prior conviction inadmissible.

As to the second criterion, a felony conviction for possession of narcotics falls within the category of crimes "that do not reflect directly on the credibility of one who has been convicted of them"; *State* v. *Geyer,* supra, 12; rather than within the category of crimes that bear directly on credibility and "imply a general disposition toward dishonesty . . . ." Id. While not as probative of credibility, a narcotics felony conviction " 'demonstrates a bad general character, a "general readiness to do evil" and . . . such a disposition alone supports an inference of a "readiness to [prevaricate] in [this] particular case . . . ." *Gertz* v. *Fitchburg R. Co.,* 137 Mass. 77, 78 (1884) (Holmes, J.).' *State* v. *Nardini,* [187 Conn. 513, 523–24, 447 A.2d 396 (1982)]." Id. Furthermore, while crimes such as narcotics felony convictions are less probative of credibility than those such as perjury or fraud, we have noted the "legislative judgment that records of [all] crimes involving sentences of more than one year affect the credibility of a witness . . . ." *State* v. *Bitting,* 162 Conn. 1, 10, 291 A.2d 240 (1971). The defendant argues, however, that in *State* v. *Geyer,* supra, 13–15, this court ruled that in a prosecution for possession of narcotics with intent to sell, evidence of four prior narcotics convictions was improperly admitted to impeach the defendant's credibility. It is clear that the prejudicial similarity between the evidence and the crime at issue there, was, unlike this case, very high. Moreover, we note that the language in *Geyer* suggesting that the crime be referred to as an "unspecified" felony conviction is permissive not mandatory. Id., 16. In view of the total dissimilarity between this murder charge and the *recent* narcotics felony conviction, the fact that such a conviction has less bearing on the defendant's credibility than crimes

recognized as indicating dishonesty, such as perjury and fraud, is not sufficient to constitute an abuse of the trial court's discretion in this instance.

## IV

The defendant's final claim is that the trial court improperly failed to instruct the jury that, if it rejected his claim of self-defense, it must be unanimous in its reason for rejecting such a claim.[7] In its charge to the jury, the trial court instructed the jury that its verdict must be unanimous. Additionally, the trial court informed the jury that there were five grounds that might vitiate a claim of self-defense. Of these five alternatives, the defendant has focused on the trial court's explanation to the jury that the defendant was not justi-

---

[7] "[General Statutes] Sec. 53a-19. USE OF PHYSICAL FORCE IN DEFENSE OF PERSON. (a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

fied in using force if: (1) he was the initial aggressor and did not attempt to withdraw; or (2) he engaged in mutual combat. The defendant argues that the jury could have rejected his claim of self-defense without unanimously agreeing upon which of these two exclusionary factors applied. See General Statutes § 53a-19 (c) (2) and (3), footnote 7.

"[W]e have not required a specific unanimity charge to be given in every case in which criminal liability may be premised on the violation of one of several alternative subsections of a statute. We have instead invoked a multipartite test to review a trial court's omission of such an instruction. We first review the instruction that was given to determine whether the trial court has sanctioned a nonunanimous verdict. If such an instruction has not been given, that ends the matter." *State* v. *Famiglietti,* 219 Conn. 605, 619, 595 A.2d 306 (1991). Furthermore, "we have 'serious reservation[s] about the applicability of the unanimity requirement to self-defense . . . .' " *State* v. *Diggs,* 219 Conn. 295, 301–302, 592 A.2d 949 (1991), quoting *State* v. *Bailey,* 209 Conn. 322, 336, 551 A.2d 1206 (1988). "[T]he defendant here is unable to provide us with any authority for the proposition that a unanimity instruction was required as to the factual basis for the jury's rejection of his self-defense claim, nor have we been able to locate any." *State* v. *Diggs,* supra, 302; see also *State* v. *Bailey,* supra. "[W]e do not, at this juncture, express the opinion that a specific unanimity charge would never be required for claims of self-defense . . ."; *State* v. *Bailey,* supra; but do hold that where, as here, the trial court did not sanction a nonunanimous verdict, a unanimity instruction on self-defense is not required. *State* v. *Famiglietti,* supra; see also *State* v. *Bailey,* supra, 334–36.

The judgment is affirmed.

In this opinion the other justices concurred.