## NORBERTO RIVERA *v.* COMMISSIONER OF CORRECTION
### (AC 20818)

Lavery, C. J., and Foti and Daly, Js.

Argued March 18—officially released June 18, 2002

*Todd A. Edgington*, assistant public defender, for the appellant (petitioner).

*Robert J. Scheinblum*, assistant state's attorney, with whom, on the brief, were *Paul E. Murray*, state's attor-

ney, and *Rachel M. Baird*, former assistant state's attorney, for the appellee (respondent).

*Opinion*

FOTI, J. The petitioner, Norberto Rivera, appeals from the habeas court's dismissal of his petition for a writ of habeas corpus, which he based on his claims of ineffective assistance of trial counsel and actual innocence. On appeal, the petitioner claims that the habeas court improperly (1) found that his trial counsel's failure to impeach the testimony of Javier Mautino, one of the two victims in the incident that led to the petitioner's conviction, did not constitute ineffective assistance under *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and (2) rejected his claim of actual innocence. We affirm the judgment of the habeas court.

Our Supreme Court set forth the following facts underlying the petitioner's conviction, as the jury reasonably could have found them, when it upheld the petitioner's conviction. *State* v. *Rivera*, 220 Conn. 408, 409–10, 599 A.2d 1060 (1991). "Javier Mautino, the assault victim, is the brother of the [petitioner's] former girlfriend, Maria Ortiz. After Ortiz ended their relationship in 1984, the [petitioner] remained angry at her and blamed her family for interfering with their romance. On February 3, 1987, in a taped telephone conversation with Ortiz, the [petitioner] threatened to kill her brother, Mautino. In June, 1988, shortly before the incident underlying the [petitioner's] conviction, the [petitioner] placed several telephone calls to Ortiz' sister, Sonia Fraser, telling her that he planned to kill Mautino.

"On the evening of July 1, 1988, Mautino and Fernando Fuentes, the murder victim, were at the Peruvian Club in Hartford. The [petitioner], who was also present, argued with Mautino and challenged him to a fight outside. Mautino declined and the [petitioner], calling

him a coward, departed. When Mautino and Fuentes left shortly thereafter, the [petitioner] who had remained outside the club, shot both men. Fuentes died from his wounds and Mautino, although surviving the assault, died from cancer before the trial." Id.

As a result of that incident, the state charged the petitioner with murder in violation of General Statutes § 53a-54a (a), criminal attempt to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-49 (a) (2), and assault in the first degree in violation of General Statutes § 53a-59 (a) (1). "On July 13, 1990, a jury rendered a guilty verdict on all counts. The trial court sentenced the [petitioner] to three terms of imprisonment: fifty years for the first count of murder; twenty years for the second count of attempted murder; and twenty years for the third count of assault in the first degree. The second and third counts were to run concurrently and both were to run consecutively with the first count for a total effective sentence of seventy years." *State* v. *Rivera*, supra, 220 Conn. 410.

On May 20, 1992, following our Supreme Court's affirmation of his conviction, the petitioner filed a petition for a writ of habeas corpus, claiming ineffective assistance of trial counsel and actual innocence. On December 30, 1999, the habeas court dismissed the petition for a writ of habeas corpus. Subsequently, the court granted the petition for certification to appeal from that decision. Additional facts will be set forth as necessary to our resolution of the petitioner's claims.

I

The petitioner first claims that the habeas court improperly found that the representation afforded him by Brian M. O'Connell, his trial counsel, was not ineffective or even if it was ineffective, that it was not prejudi-

cial.[1] Specifically, the petitioner argues that O'Connell's failure to impeach Mautino on various inconsistencies in his testimony amounted to ineffective assistance of counsel, thereby causing him prejudicial harm under the *Strickland* standard. We disagree.

We first set forth our well established standard of review regarding the petitioner's claim. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Grant* v. *Commissioner of Correction*, 68 Conn. App. 484, 486, 791 A.2d 697, cert. denied, 260 Conn. 909, 795 A.2d 544 (2002).

The United States Supreme Court's decision in *Strickland* established the two part legal standard, adhered to by our Supreme Court, for determining whether a petitioner's conviction requires reversal based on a claim that his counsel's assistance was so defective as to have deprived him of a fair trial. The "petitioner must make a two-fold showing: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers

---

[1] The petitioner further claims that the habeas court applied the incorrect standard to its determination of prejudice under the second prong of *Strickland* when it noted that the petitioner had not established prejudice "by a fair preponderance of the evidence." The petitioner is correct because the proper standard for a determination of prejudice under *Strickland* requires a petitioner to demonstrate that there is a reasonable probability that the result of the proceedings would have been different had it not been for counsel's deficient performance. See *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 155, 662 A.2d 718 (1995). While we therefore agree that the habeas court did not apply the appropriate standard to the facts of this case; see *State* v. *Comollo*, 21 Conn. App. 210, 216, 572 A.2d 1037, cert. denied, 215 Conn. 811, 576 A.2d 542 (1990); on the basis of our plenary review of the record, we conclude that the petitioner has failed to show that he was prejudiced by his counsel's deficient performance.

with ordinary training and skill in the criminal law; and (2) this lack of competency contributed so significantly to his conviction as to have deprived him of a fair trial. . . . A reviewing court can find against a petitioner on either ground, whichever is easier." (Internal quotation marks omitted.) *Mercer* v. *Commissioner of Correction*, 31 Conn. App. 771, 774, 626 A.2d 831 (1993), rev'd on other grounds, 230 Conn. 88, 644 A.2d 340 (1994); see *Valeriano* v. *Bronson*, 209 Conn. 75, 85–86, 546 A.2d 1380 (1988); *Nardini* v. *Manson*, 207 Conn. 118, 124, 540 A.2d 69 (1988) ("court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice"); *Lewis* v. *Lane*, 832 F.2d 1446, 1460 (7th Cir. 1987), cert. denied, 488 U.S. 829, 109 S. Ct. 83, 102 L. Ed. 2d 59 (1988).

Moreover, "[i]n reviewing the claim, this court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under these circumstances, the challenged action might be considered sound trial strategy. . . . In assessing the petitioner's claim, this court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (Citations omitted; internal quotation marks omitted.) *Magnotti* v. *Meachum*, 22 Conn. App. 669, 674–75, 579 A.2d 553 (1990); see 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 39, p. 182 & (Cum. Sup. 2000) p. 172. On the basis of these legal principles, we now reach the merits of the petitioner's claim.

A

The habeas court found, under the first prong of *Strickland,* two specific instances of ineffective assis-

tance of counsel. Both instances arise from O'Connell's failure to impeach Mautino's testimony.

In the first instance, the habeas court found O'Connell's representation deficient because he failed to cross-examine and expose certain inconsistencies in Mautino's testimony concerning an alleged physical confrontation, and the events preceding it, between Mautino and the petitioner prior to the shootings. As the habeas court stated, the "inconsistency breaks down into two parts: (1) whether Mautino agreed to go outside to fight with [the petitioner], and (2) whether there was actually a fight. . . . [The petitioner's] claim is that Mautino invited [him] to fight, that [he] accepted Mautino's offer, and that there was indeed a fistfight on Francis Avenue. Mautino has apparently given differing statements regarding whether he agreed to fight . . . but he has never testified that he did in fact fight [the petitioner] on the street."

The habeas court noted that "Detective [Michael] Dakin's first report of the incident, made roughly sixteen hours after the shootings, indicate[d] that . . . Mautino 'became angered and complied' with [the petitioner's] invitation to go outside to fight." During Dakin's subsequent interview of Mautino, "Mautino indicated 'that previous to going outside to fight, [the petitioner] went outside and returned, then they proceeded to take their differences outside.' However, at the probable cause hearing, on direct examination, Mautino testified that he declined [the petitioner's] invitation to go outside and fight. Also, Mautino's deposition testimony indicate[d] that Mautino refused to go outside to fight with [the petitioner]."

Second, the habeas court found O'Connell's representation to be deficient regarding his failure to impeach Mautino about the location of his car. As the habeas court stated, "[t]he petitioner alleges that 'while . . . O'Connell allowed Mautino to place [the petitioner]

near a car that was, in fact, at least 145 feet south of where the shooting actually took place . . . O'Connell failed to point this fact to the jury. This alleged inconsistency is drawn from the difference in the location of Mautino's car, as described by Detective [Peter] Michaud, compared to Mautino's statements that [the petitioner] started shooting while standing near Mautino's car, which was near a light pole. . . . Mautino testified that on the night of the shootings he and [the deceased victim] 'were intending to go across the street to get to [Mautino's] car.' Because of people coming into the club and the fact that cars were parked bumper to bumper, Mautino explained that he turned north to walk around the parked cars. At the deposition, Mautino also testified that his 'car was across the street, and very near a light pole.' Mautino testified further that as he left the club, he turned right (north), in order to avoid the people coming into the club, and then he walked to the other side of the two parked cars in order to cross the street. Mautino explained further that 'I must have been looking for my keys or something for my car, and when I walked—a car went by and I lift[ed] my head up and I saw very near my car, [the petitioner]. And he shot me. I saw the flare, you know, the light . . . .''

The habeas court, however, determined that, although O'Connell's failure to expose the inconsistencies in Mautino's testimony regarding the alleged fight and the events preceding it, as well as the location of Mautino's automobile, amounted to deficient representation, the petitioner did not suffer actual prejudice from it. We review only the habeas court's conclusion that O'Connell's deficient representation of the petitioner did not call into question the reliability of the trial, thereby resulting in actual prejudice to the petitioner.

The petitioner argues that O'Connell's failure was tantamount to a failure to induce reasonable doubt in

the minds of the jurors. We disagree because despite the fact that the habeas court found O'Connell's representation of the petitioner to be deficient regarding those events, the jury had ample evidence on which to base its conviction of the petitioner. For instance, testimony revealed that in 1987 during a taped telephone conversation with Ortiz, the petitioner had threatened to kill Mautino. Testimony further revealed that the petitioner, shortly before the incident, made several telephone calls to Fraser during which he stated to her his plans to kill Mautino. Mautino's testimony placed the petitioner at the crime scene and on numerous occasions he positively identified the petitioner as the shooter. Mautino further testified that he saw the petitioner shoot him and that he heard the petitioner speak during the shootings and say: "So there are two of you, so there is two for one"; "Now everybody knew who [the petitioner] was"; and "I am going to kill you."

On the basis of our plenary review of the record, we conclude that the habeas court properly concluded that any deficiencies in O'Connell's representation of the petitioner did not cause him actual prejudice because they were not so serious as to deprive the petitioner of a fair trial. See *Crump* v. *Commissioner of Correction*, 68 Conn. App. 334, 337, 791 A.2d 628 (2002). Stated differently, the habeas court properly concluded that O'Connell's lack of competency did not contribute so significantly to the petitioner's conviction as to have deprived him of a fair trial. See *Valeriano* v. *Bronson*, supra, 209 Conn. 86. We agree that had O'Connell impeached Mautino's testimony, such elicitation would have proven trivial at best because it would not have refuted the "totality of the evidence before the judge or jury." *Strickland* v. *Washington*, supra, 466 U.S. 695. The habeas court, therefore, properly concluded that the petitioner failed to show actual prejudice.

B

The petitioner claims that numerous other instances of ineffective assistance of counsel caused him actual prejudice. The habeas court, however, found that such instances either did not amount to deficient representation, under the first prong of the analysis, or that, under the second prong of the analysis, there was no actual prejudice suffered by the petitioner as a result of such representation.

The petitioner specifically claims that O'Connell's failure to impeach Mautino's testimony was deficient regarding whether two Puerto Rican males were involved in the shootings, the lighting conditions at the crime scene, his personal knowledge of the petitioner, his knowledge of the petitioner's relationship with Ortiz, the location of the petitioner's person from which the weapon was produced, the number of confrontations between Mautino and the petitioner inside the club before the shooting, the sequence of the shootings, why Mautino and the deceased victim left the club on that night, whether people were going into the club while Mautino and the deceased victim were exiting it and whether the deceased victim hit his head on a parked car after being shot.

Assuming that all of those instances amounted to deficient representation of trial counsel, we conclude that the petitioner has failed in each instance, whether considered individually or collectively, to satisfy his burden of proving actual prejudice. In other words, he did not "demonstrate that there is a reasonable probability that the result of the proceedings would have been different had it not been for counsel's deficient performance." *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 155, 662 A.2d 718 (1995). A jury, on the basis of the totality of the evidence presented to it, reasonably could have concluded beyond a reasonable

doubt that the petitioner was guilty of the crimes with which he was charged.

## II

The petitioner next claims that the habeas court improperly rejected his claim of actual innocence.[2] He contends that he has asserted a "gateway" claim of actual innocence and that the habeas court erred in failing to apply the federal standard for review of gateway claims of actual innocence set forth by the United States Supreme Court in *Schlup* v. *Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). We disagree.

Neither this court nor our Supreme Court has expressly recognized the viability of a gateway claim of actual innocence in this state. In the federal courts, a habeas petitioner may assert a claim of actual innocence to circumvent a procedural obstacle that would otherwise operate to bar review of a claim of constitutional error affecting the criminal trial. See id., 314. Such an actual innocence claim is thus "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera* v. *Collins*, 506 U.S. 390, 404, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993). Here, however, the petitioner was not confronted with any procedural impediment to review of his ineffective assistance of counsel claim, and, indeed, the habeas court fully addressed the merits of that claim. The petitioner was

---

[2] There are two types of actual innocence claims: Gateway and freestanding. In a freestanding claim of actual innocence, "there is no claim of an antecedent constitutional violation that affected the result of [the] criminal trial. Such a freestanding claim is to be contrasted with what has come to be known in federal habeas jurisprudence as a 'gateway' claim of actual innocence. Such a claim serves as a gateway to permit federal habeas review of an otherwise procedurally barred state conviction that the petitioner asserts is constitutionally flawed"; *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 788 n.28, 700 A.2d 1108 (1997); it is "[a] claim based on an antecedent constitutional violation that affects the results of the criminal trial . . . ." Id., 813 n.7 (*Berdon, J.*, concurring and dissenting).

therefore in no need of a "gateway," and the habeas court correctly declined the petitioner's invitation to apply the federal gateway standard to his actual innocence claim.

The judgment is affirmed.

In this opinion the other judges concurred.