# STATE OF CONNECTICUT *v.* KENNETH J. JURGENSEN
# (13607)

Foti, Lavery and Spear, Js.

Argued June 11—officially released August 27, 1996

*Reed D. Rubinstein,* with whom was *Daniel S. Blinn,* for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Alfred Baldwin,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b).[1] The defendant claims that the trial court improperly (1) excluded testimony that a police informant was paid to entrap him, (2) denied the defendant's request for a *Secondino* charge; see *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 165 A.2d 598 (1960); (3) denied the defendant's request for a continuance, and (4) denied the defendant's motion to dismiss. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In December, 1992, the Connecticut state police were contacted by Carl Guarco, an informant who had information regarding the narcotics trade. Guarco subsequently spoke with Detective Frederick Tedesco, a state police trooper assigned to the statewide narcotics task force. Guarco informed Tedesco that he knew of

---

[1] General Statutes § 21a-278 (b) provides in pertinent part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. . . ."

someone involved in the narcotics trade and provided him with the name of the defendant. Soon thereafter, Tedesco was contacted by Joseph Mowel, who named the defendant as being involved in the trade of heroin. Tedesco and his partner, Detective Kevin Mellon, learned that the defendant had a prior conviction for the possession of narcotics.

Mowel arranged a meeting on January 7, 1993, between Mellon and the defendant for the purpose of purchasing heroin. Prior to that meeting, Mellon photocopied four $20 bills that would be used in the drug sale. Mellon, in plain clothes and driving an unmarked vehicle, picked up Mowel and proceeded to the defendant's residence. At the defendant's residence Mowel introduced Mellon to the defendant. Mellon asked the defendant about the purchase of heroin, and the defendant responded that he did not have any at the time. The defendant suggested to Mellon that if they took a ride he would be able to obtain some heroin. The three then drove from the defendant's residence in Mellon's vehicle. They proceeded, at the direction of the defendant, to a public telephone on Washington Street in Hartford. After making a brief call on that telephone, the defendant returned to the vehicle and directed Mellon to an area near the intersection of Washington and Madison Streets in Hartford.

Soon thereafter, another vehicle arrived and parked behind Mellon's vehicle. Mellon then gave the defendant the four $20 bills he had previously photocopied. The defendant left Mellon's vehicle and went into the vehicle that had just arrived. The defendant returned to Mellon's vehicle with four small bags that appeared to contain heroin. Mellon then drove the defendant back to his residence and brought the four bags to the statewide narcotics task force office where the substance in the bags tested positive for heroin. At trial, the defendant raised the defense of entrapment.

I

The defendant first claims that the trial court improperly excluded part of Marla Guarco's testimony concerning a telephone conversation that she had with Mowel. Marla Guarco was the defendant's girlfriend and the former wife of Carl Guarco, the police informant. At trial, the defendant made an offer of proof outside the presence of the jury as to Marla Guarco's proposed testimony. During the offer of proof, Marla Guarco testified that she had met Mowel in the presence of the defendant several days before Mowel had first called her. Marla Guarco stated that on January 2, 1993, Mowel called her and told her that she should give him $10,000 because Carl Guarco had offered Mowel $15,000 to do something to the defendant. Marla Guarco stated that Mowel said that if she gave him $10,000 he would leave the defendant alone. Marla Guarco also testified that Mowel called again the next day and her daughter answered the telephone. Marla Guarco testified that when she would not come to the telephone, Mowel told her daughter that he would kill Marla Guarco. After hearing this proposed testimony, the trial court ruled it inadmissible on both hearsay and relevancy grounds.

"On appeal, the trial court's rulings on the admissibility of evidence are accorded great deference. *State* v. *Sharpe*, 195 Conn. 651, 658–59, 491 A.2d 345 (1985); *State* v. *Piskorski*, 177 Conn. 677, 695, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). Rulings on such matters will be disturbed only upon a showing of clear abuse of discretion. *State* v. *Falcon*, 196 Conn. 557, 566, 494 A.2d 1190 (1985)." *State* v. *Boucino*, 199 Conn. 207, 225, 506 A.2d 125 (1986).

The defendant first contends that the statements made by Mowel to Marla Guarco and her daughter were hearsay but admissible as admissions of an opposing

party. Hearsay has long been defined as an out-of-court statement that is offered to establish the truth of the facts contained in the statement. See *State* v. *Sharpe*, 195 Conn. 651, 661, 491 A.2d 345 (1985); *Murray* v. *Supreme Lodge, N.E.O.P.*, 74 Conn. 715, 718, 52 A. 722 (1902).

Connecticut recognizes that an admission of a party may be entered into evidence under an exception to the hearsay rule. *State* v. *Rivera*, 220 Conn. 408, 415, 599 A.2d 1060 (1991); *Fico* v. *Liquor Control Commission*, 168 Conn. 74, 77, 358 A.2d 353 (1975). Because of the unique relationship of the government and its agents, "the inconsistent out-of-court statements of a government agent [even when] made in the course of the exercise of his authority and within the scope of that authority [and even where such ] statements would be admissions binding upon an agent's principal in civil cases, are not so admissible here as 'evidence of the fact.' " *United States* v. *Santos*, 372 F.2d 177, 180 (2d Cir. 1967); see also *United States* v. *Kampiles*, 609 F.2d 1233, 1246 (7th Cir. 1979), cert. denied, 446 U.S. 954, 100 S. Ct. 2923, 64 L. Ed. 2d 812 (1980). The proffered testimony would be inadmissible even if we had chosen to view the police and its agents as opposing parties for the purposes of hearsay analysis. Mowel was never an agent of the police because he only introduced the defendant to Mellon. Furthermore, even if Mowel were an agent of the police his telephone calls to Marla Guarco and her daughter would have fallen outside the scope of any possible agency relationship.

The defendant next claims that Mowel's telephone conversations with Marla Guarco and her daughter were admissible under the declaration against penal interest exception to the hearsay rule. "In any analysis of the admissibility of a declaration against penal interest, one must first determine whether the declarant is unavailable; if and only if, this is shown by the propo-

nent of the proffered hearsay statement will the court proceed to examinations of trustworthiness. *State* v. *DeFreitas*, 179 Conn. 431, 441–43, 426 A.2d 799 (1980); see also *State* v. *Frye*, 182 Conn. 476, 480–81, 438 A.2d 735 (1980)." (Internal quotation marks omitted.) *State* v. *Duntz*, 223 Conn. 207, 230, 613 A.2d 224 (1992). Assuming that Mowel was unavailable for the purposes of our analysis, we move to the three-pronged test to determine trustworthiness. "Three relevant considerations when examining the trustworthiness of declarations against penal interest are: '(1) the time of the declaration and the party to whom the declaration was made; (2) the existence of corroborating evidence in the case; and (3) the extent to which the declaration is really against the declarant's penal interest.' *United States* v. *Guillette*, 547 F.2d 743, 754 (2d Cir. 1976), cert. denied, 434 U.S. 839, 98 S. Ct. 132, 54 L. Ed. 2d 102 (1977)." *State* v. *Rivera*, 221 Conn. 58, 69–70, 602 A.2d 571 (1992). We find that the second prong of this test was not satisfied. "The corroboration requirement for the admission of a third party statement against penal interest is significant and goes beyond minimal corroboration. Third party statements exculpating an accused are suspect and the requirement of corroboration, to effectuate its purpose of circumventing fabrication, must be construed as requiring corroborating circumstances that clearly indicate the trustworthiness of the proffered statement. *United States* v. *Zirpolo*, 704 F.2d 23, 26 (1st Cir.), cert. denied, 464 U.S. 822, 104 S. Ct. 87, 78 L. Ed. 2d 96 (1983) . . . ." (Citations omitted.) *State* v. *Rosado*, 218 Conn. 239, 249, 588 A.2d 1066 (1991). Since there was no corroborating evidence supporting the trustworthiness of the statements made by Mowel to Marla Guarco and her daughter, they were properly excluded by the trial court.

Finally, the defendant argues that Mowel's statements should have been admitted under the state of

mind exception to the hearsay rule. The defendant claims that this exception to the hearsay rule applies because Mowel's statements demonstrate his mental state at the time the calls were made and that his future acts were consistent with his words. "The hearsay statements of an unavailable declarant, made in good faith and not for a self-serving purpose, that express his or her present intentions to meet with another person in the immediate future are admissible and allow the trier of fact reasonably to infer that the declarant's expressed intention was carried out." *State* v. *Santangelo*, 205 Conn. 578, 592, 534 A.2d 1175 (1987). In this case, the evidence that the defendant seeks to have admitted tends to show Mowel's purpose in arranging the meeting. Mowel's purpose, however, stems from Mowel's role as the agent of Carl Guarco, not as an agent of the government. In order for a defendant to defend successfully on a theory of entrapment, it must be shown that the government induced the defendant to commit a criminal act that he would not otherwise have committed, and that the government acted with the purpose of initiating a criminal prosecution against the defendant. We have already held that Mowel was not acting as an agent of the police, and even if he were viewed as such an agent, the telephone calls in question are clearly outside the scope of any possible agency relationship. We find, therefore, that even if Mowel's statements were admissible under the state of mind exception to the hearsay rule, they were irrelevant to the defense of entrapment and were properly excluded.

We conclude, therefore, that it was within the trial court's broad discretion to rule that this testimony was inadmissible.

## II

The defendant's second claim is that the trial court improperly denied his request for a *Secondino* instruc-

tion when the state failed to call Mowel as a witness. "The failure to produce a witness for trial who is available and whom a party would naturally be expected to call warrants an adverse inference instruction against that party who would be expected to call that witness. *Secondino* v. *New Haven Gas Co.*, [supra, 147 Conn. 674–75]. *State* v. *Santangelo*, [supra, 205 Conn. 596]; see also *State* v. *Amarillo*, 198 Conn. 285, 307, 503 A.2d 146 (1986). An inquiry into the appropriateness of a *Secondino* instruction is, accordingly, two-pronged: whether the witness is available and whether, under the facts of this case, the witness is one whom the state would naturally be expected to produce." (Internal quotation marks omitted.) *State* v. *Wood*, 208 Conn. 125, 140, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988). This court has consistently held that "[w]hether an absent witness has superior or peculiar information and whether an adverse inference can be drawn is a question of fact for the trier. *Perl* v. *Case*, 3 Conn. App. 111, 115, 485 A.2d 1331 [cert. denied, 195 Conn. 803, 491 A.2d 1103] (1985). This court cannot reverse or modify the trial court's determinations of fact unless they are clearly erroneous. *Buddenhagen* v. *Luque*, 10 Conn. App. 41, 44, 521 A.2d 221 (1987)." *State* v. *Williams*, 20 Conn. App. 263, 266, 565 A.2d 1365 (1989).

The defendant has not carried the burden of putting forth sufficient evidence demonstrating that Mowel was available to testify during trial. A Hartford county deputy sheriff testified at trial that she unsuccessfully attempted to serve Mowel with a subpoena four times. "Before a negative inference can be drawn from a party's failure to produce a witness, it must be shown that the party was able to procure the witness' *physical presence in court*." (Emphasis added; internal quotation marks omitted.) *State* v. *Wood*, supra, 208 Conn. 140. Since the defendant failed to show Mowel's availability,

we need not determine whether he was in fact a witness whom the state would naturally have been expected to produce. The trial court's decision not to deliver the *Secondino* instruction was not clearly erroneous.

## III

The defendant's third claim is that the trial court abused its discretion by denying his motion for a continuance. Our Supreme Court has concluded that "[t]he decision to grant a request for a continuance lies within the sound discretion of the trial court and will not be disturbed on appeal absent clear abuse of that discretion. *State* v. *Aillon*, 202 Conn. 385, 394, 521 A.2d 555 (1987); *State* v. *Stanley*, 197 Conn. 309, 311–12, 497 A.2d 46 (1985). The defendant bears the heavy burden of proving that the trial court acted arbitrarily and substantially impaired the defendant's ability to defend himself. *State* v. *Beckenbach*, 198 Conn. 43, 47–48, 501 A.2d 752 (1985)." *State* v. *Damon*, 214 Conn. 146, 160, 570 A.2d 700, cert. denied, 498 U.S. 819, 111 S. Ct. 65, 112 L. Ed. 2d 40 (1990).

The defendant has failed to meet this burden. The continuance was requested just prior to the start of jury selection. Our review of the record reveals that the defendant sought the continuance in order to find and serve Mowel to have him testify. There were no assurances made by the defendant that this task would even be possible. The trial court also assured the defendant that there would be several days before the defense portion of the trial would begin. Furthermore, the trial court informed the parties that the motion for the continuance was being denied with the understanding that at any time either party could again move for a continuance.[2] The defendant did not make a further request for a continuance.

---

[2] The trial court stated: "I will deny the motion for continuance at this time with a further understanding that obviously at any time either counsel can request a continuance for whatever reason is necessary and the court

"The trial court has a responsibility to avoid unnecessary interruptions, to maintain the orderly procedure of the court docket, and to prevent any interference with the fair administration of justice." *State* v. *Damon,* supra, 214 Conn. 161. We find that the trial court did not abuse its discretion by denying the defendant's motion for a continuance.

## IV

The defendant's fourth claim is that the trial court improperly denied his motion to dismiss made at the close of the evidence. The defendant argues that he was entitled to a dismissal on two separate grounds: (1) because he was entrapped as a matter of law and (2) because the state failed to call Mowel as a witness.

General Statutes § 53a-15[3] provides for the defense of entrapment in Connecticut. Our Supreme Court has recognized this defense as being one based on subjectivity rather than objectivity. *State* v. *Lee,* 229 Conn. 60, 78–84, 640 A.2d 553 (1994). "The subjective defense of entrapment succeeds only if the government, not the accused, is the source of the criminal design. The subjective defense fails if the accused is previously disposed to commit the crime, and the government merely facilitates or assists the criminal scheme." Id., 79. Nevertheless, "[t]he defense of entrapment raises a question of fact, and, where there is a claim of entrapment, the issue must be resolved by the trier . . . ." *State* v. *Taylor,* 153 Conn. 72, 85, 214 A.2d 362 (1965), cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966).

will take this request into consideration after hearing both parties with respect to it."

[3] General Statutes § 53a-15 provides: "Entrapment as defense. In any prosecution for an offense, it shall be a defense that the defendant engaged in the proscribed conduct because he was induced to do so by a public servant, or by a person acting in cooperation with a public servant, for the purpose of institution of criminal prosecution against the defendant, and that the defendant did not contemplate and would not otherwise have engaged in such conduct."

The defendant, however, claims that he was entrapped as a matter of law. "It is inappropriate for an appellate court to determine whether a defendant was entrapped when such a determination would necessarily entail 'choosing between conflicting witnesses' and 'judging credibility.' See *Sherman* [v. *United States*, 356 U.S. 369, 373, 78 S. Ct. 819, 2 L. Ed. 2d 848 (1958)]." *United States* v. *Davis*, 36 F.3d 1424, 1430 (9th Cir. 1994). Furthermore, a defendant may prevail on a claim of entrapment as a matter of law only when it is undisputed, based on the evidence viewed in the light most favorable to the state, that the defendant was induced by the state to commit the crimes and was not predisposed to do so. Id.; see *United States* v. *Harris*, 9 F.3d 493 (6th Cir. 1993); *United States* v. *McLernon*, 746 F.2d 1098 (6th Cir. 1984).

In this case, there was conflicting evidence presented at trial on the issue of entrapment. We believe that a rational trier of fact could have determined that the defendant was predisposed to sell heroin to Mellon. The defendant had a drug history and a prior arrest and conviction for possession of an illegal substance. The defendant also admitted to having previously used illegal drugs with Mowel. At no time did the defendant refuse to obtain the heroin for Mellon. The facts also reflect how easy it was for the defendant to obtain heroin by placing just one phone call, manifesting the defendant's knowledge and experience in the drug trade.

The only interaction between the police and the defendant relevant to an entrapment defense was the request by Mellon to purchase heroin. Our Supreme Court has held that this kind of conduct alone is not "inducement" that would support a defense of entrapment. *State* v. *Hawkins*, 173 Conn. 431, 436, 378 A.2d 534 (1977). Furthermore, the defendant would have been guilty of violating § 21a-278 (b) even if money were not

exchanged with Mellon because a mere *transfer* of the narcotics is sufficient to violate the statute. See *State* v. *Avila*, 166 Conn. 569, 580, 353 A.2d 776 (1974) (concluding that conduct that defendant must be shown to have intended for possession of heroin with intent to sell or dispense quite broad). We, therefore, conclude that the trial court properly denied the defendant's motion to dismiss on the ground that he was entrapped as a matter of law.

The defendant also claims that he was entitled to a dismissal because the state did not call Mowel to testify. We find no merit to this claim. The state does have an obligation to produce testimony of every available witness tending to aid in ascertaining the truth of facts relevant to a criminal case. *State* v. *Guilfoyle*, 109 Conn. 124, 134, 145 A. 761 (1929). Mowel, however, was unavailable at the time of trial as reflected by the testimony of the deputy sheriff who unsuccessfully tried to serve him with a subpoena four times.

Furthermore, even though Mowel was present when the defendant sold heroin to Mellon, the only action he took was introducing the defendant to the police. Mellon secured the evidence on which the defendant was convicted. Mellon testified at trial, and the state is not under an obligation to call every competent witness to testify. See *United States* v. *Moore*, 954 F.2d 379, 381 (6th Cir. 1992). The trial court properly denied the defendant's motion to dismiss to the extent that it was based on the state's failure to call Mowel as a witness.

The judgment is affirmed.

In this opinion the other judges concurred.