ONE WAY FARE ET AL. *v.* DEPARTMENT OF
CONSUMER PROTECTION
(AC 26307)

DiPentima, Harper and Hennessy, Js.

Argued February 14—officially released August 1, 2006

*James A. Wade*, with whom, on the brief, was *Aaron Samples*, for the appellants (plaintiffs).

*Matthew B. Beizer*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

HENNESSY, J. The plaintiffs[1] appeal from the judgment of the trial court dismissing their appeal from the decision of the defendant, the department of consumer protection, which found the plaintiffs in violation of General Statutes § 30-86 for the sale or delivery of alcohol to a minor. The plaintiffs claim that the court improperly concluded that (1) they failed to establish an entrapment defense and (2) the defendant's determination that they violated § 30-86 was supported by substantial evidence on the record. We disagree and, accordingly, affirm the judgment of the court.

The following facts and procedural history are relevant to our discussion. One Way Fare, a restaurant in Simsbury, holds a cafe permit issued by the defendant, which allows the retail sale and consumption of alcoholic liquor on its premises. Its clientele is generally families, middle-aged couples, and senior citizens. Teenagers and young adults rarely, if ever, frequent it, and it does not make an attempt to attract such clients. Also, until the incident giving rise to this appeal, One Way Fare has never been cited for selling liquor to minors.[2]

On May 24, 2002, as part of an undercover sting operation, an underage female, Mary D'Onofrio, and Detective John Beaulieu of the Farmington police department

---

[1] The following plaintiffs are parties to this appeal: One Way Fare, a restaurant; Obie Martin, its permittee; and Obie Martin Enterprises, its backer.

[2] One Way Fare also claims that it has never been reported or complained against to either the Simsbury police department or the liquor control commission for selling liquor to minors.

went to One Way Fare with the sole purpose of determining whether One Way Fare would sell or deliver an alcoholic beverage to a minor in violation of § 30-86. D'Onofrio's role was to order an alcoholic beverage, and Beaulieu's role was to witness any transaction that might take place. When D'Onofrio entered One Way Fare, she immediately walked to the bar, sat on a stool and ordered a Bud Light bottle of beer from the bartender, Patrick Murray. Without asking D'Onofrio for any age identification, Murray retrieved a bottle of Bud Light and placed it in front of D'Onofrio. D'Onofrio and Beaulieu then exited One Way Fare. Shortly thereafter, Sergeant Brian Cavanaugh and Detective Thomas Sheehan, both of the Simsbury Police Department, entered One Way Fare and interviewed the manager on duty, Calista Black. After interviewing Black, Cavanaugh drafted a police report reflecting the events that previously took place.

The Simsbury police department ultimately notified the defendant about the events that occurred at One Way Fare. On May 19, 2003, the defendant served a complaint on One Way Fare and the two other plaintiffs. The complaint alleged that on May 24, 2002, the plaintiffs sold or delivered alcoholic liquor to a female undercover operative born on July 22, 1981. Subsequently, a formal administrative hearing was held before the liquor control commission. On December 16, 2003, the defendant issued a memorandum of decision in which it found the plaintiffs in violation of § 30-86. The defendant also rejected the plaintiffs' entrapment defense.

The plaintiffs appealed from the defendant's decision to the trial court. On February 1, 2005, the trial court dismissed the plaintiff's appeal, holding that the plaintiffs did not establish an entrapment defense and that the defendant's determination that the plaintiffs violated § 30-86 was reasonably supported by substantial

evidence on the record. This appeal followed. Additional facts will be set forth as necessary.

I

We first address the plaintiffs' claim that the court improperly concluded that they had failed to establish an entrapment defense. "General Statutes § 53a-15 provides for the defense of entrapment in Connecticut. Our Supreme Court has recognized this defense as being one based on subjectivity rather than objectivity. *State* v. *Lee*, 229 Conn. 60, 78–84, 640 A.2d 553 (1994). The subjective defense of entrapment succeeds only if the government, not the accused, is the source of the criminal design. The subjective defense fails if the accused is previously disposed to commit the crime, and the government merely facilitates or assists the criminal scheme. Id., 79. Nevertheless, [t]he defense of entrapment raises a question of fact, and, where there is a claim of entrapment, the issue must be resolved by the trier . . . . *State* v. *Taylor*, 153 Conn. 72, 85, 214 A.2d 362 (1965), cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966)." (Internal quotation marks omitted.) *State* v. *Jurgensen*, 42 Conn. App. 751, 760, 681 A.2d 981, cert. denied, 239 Conn. 931, 683 A.2d 398 (1996).

The plaintiffs, however, claim that they were entrapped as a matter of law. "It is inappropriate for an appellate court to determine whether a[n] [accused] was entrapped when such a determination would necessarily entail choosing between conflicting witnesses and judging credibility. See *Sherman* [v. *United States*, 356 U.S. 369, 373, 78 S. Ct. 819, 2 L. Ed. 2d 848 (1958)]. *United States* v. *Davis*, 36 F.3d 1424, 1430 (9th Cir. 1994). Furthermore, a[n] [accused] may prevail on a claim of entrapment as a matter of law only when it is undisputed, based on the evidence viewed in the light most favorable to the state, that the [accused] was

induced by the state to commit the crimes and was not predisposed to do so. Id.; see, *United States* v. *Harris*, 9 F.3d 493 (6th Cir. 1993); *United States* v. *McLernon*, 746 F.2d 1098 (6th Cir. 1984)." (Internal quotation marks omitted.) *State* v. *Jurgensen*, supra, 42 Conn. App. 761.

"[T]he [accused] has the initial responsibility to present sufficient evidence that the state induced him or her to commit the offense charged. . . . Once that burden has been met, however, the burden shifts to the state to prove beyond a reasonable doubt that the defendant was predisposed to commit the offense." (Citation omitted.) *State* v. *Lee*, supra, 229 Conn. 82. Our state and federal decisional law define inducement differently. Under our state decisional law, "[e]vidence of unlawful inducement may be found where the police or an agent acting on their behalf appeal to the [accused's] sympathy or friendship, or where they *repeatedly or persistently solicit* the [accused] to commit the crimes." (Emphasis added.) *State* v. *Eichstedt*, 20 Conn. App. 395, 409, 567 A.2d 1237 (1989) (*Berdon, J.*, dissenting), cert. denied, 214 Conn. 806, 573 A.2d 318 (1990). Under federal law, "soliciting, proposing, initiating, broaching or suggesting the commission of the offence charged *does* constitute inducement . . . and there is no need to show something more on that issue. . . . [Therefore, under our federal law] . . . inducement refers to the Government's initiation of the crime and not to the degree of pressure exerted." (Citation omitted; emphasis in original; internal quotation marks omitted.) *United States* v. *Dunn*, 779 F.2d 157, 158 (2d Cir. 1985).

The plaintiffs argue that we should apply the Second Circuit's definition of inducement to the present case and all other cases involving administrative proceedings because administrative proceedings are "not criminal in nature and [do] not require the heightened burden for inducement [that our state decisional law currently mandates]." The defendant argues that entrapment is

not a valid defense in administrative proceedings. The defendant alternatively argues that if we conclude that entrapment is a valid defense in administrative proceedings, we should apply the same definition of inducement that we apply in criminal matters. We, however, need not address these specific arguments in order to resolve the plaintiffs' claim.

Our Supreme Court already has held that the government conduct in question does not constitute entrapment. See *Jones* v. *Dental Commission*, 109 Conn. 73, 76–77, 145 A. 570 (1929).[3] In *Jones*, an administrative proceeding, the dental commission sent a private investigator to a dentist's office to determine whether the unlicensed dental assistant employed at the office would perform dentistry without the supervision of a licensed dentist in violation of the applicable statute. Id., 75–76. The investigator, knowing that a licensed dentist would not be available to supervise, requested the services of the assistant. Id. The assistant then performed dental work on the investigator and was paid $3 for his services. As a result, the assistant was found to have violated the applicable provision of the dentistry statute, and the commission canceled his dental assistant registration. The assistant appealed from the commission's decision to the Superior Court and ultimately to our Supreme Court, claiming, inter alia, entrapment. Our Supreme Court held that the government's conduct was not entrapment because "[s]uch conduct is not so repugnant to good morals and sound policy as to require the dismissal of the proceedings based upon it; indeed, if it were not for similar conduct on the part of the

---

[3] Although *Jones* predates General Statutes § 53a-15, it is well established that § 53a-15 codifies prior Connecticut case law. *State* v. *Lee*, supra, 229 Conn. 81; see also Commission to Revise the Criminal Statutes, Penal Code Comments (1971), comment to § 53a-15 ("The defense of entrapment, as formulated [in § 53a-15] is a codification of the prior Connecticut case law. No change in the case law is intended.").

investigators employed by public authorities the convictions of persons notoriously guilty of offenses against the law would oftentimes be most difficult or impossible." Id., 76–77.

The facts in *Jones* are especially similar to the facts now before us. We therefore follow the holding of our Supreme Court in *Jones* and hold that the defendant's conduct in the case before us did not constitute entrapment. Thus, the court's conclusion that the plaintiffs failed to establish an entrapment defense was not improper.

## II

We next address the plaintiffs' claim that the court improperly concluded that the defendant's determination that the plaintiffs violated § 30-86 was supported by substantial evidence on the record. As a preliminary matter, we state the applicable standard of review. "In reviewing the commissioner's factual findings and conclusions, [the court must] determine whether there is substantial evidence in the administrative record to support . . . findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact." (Internal quotation marks omitted.) *Cendant Corp.* v. *Commissioner of Labor*, 276 Conn. 16, 36, 883 A.2d 789 (2005).

General Statutes § 30-86 (b) provides in relevant part: "Any permittee or any servant or agent of a permittee who sells or delivers alcoholic liquor to any minor . . . shall be subject to the penalties of section 30-113. . . ." Here, D'Onofrio testified that she ordered a Bud Light from Murray. She further testified that Murray placed a bottle of Bud Light in front of her immediately after she ordered it. Murray also testified that he placed a

bottle of Bud Light in front of D'Onofrio after she ordered one. This testimony clearly establishes that D'Onofrio, a minor, ordered and was served an alcoholic beverage. We, therefore, conclude the defendant's determination that the plaintiffs violated § 30-86 was supported by substantial evidence on the record.

The judgment is affirmed.

In this opinion the other judges concurred.