# EDWARD VINES *v.* COMMISSIONER OF CORRECTION
## (AC 24789)

Pellegrino, Flynn and Bishop, Js.*

Argued November 28, 2005—officially released March 14, 2006

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Michael Stone*, special public defender, for the appellant (petitioner).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *James M. Bernardi*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

FLYNN, J. The petitioner, Edward Vines, appeals following the denial of his petition for certification to appeal from the judgment denying his petition for a writ of habeas corpus. He claims that the habeas court (1) abused its discretion when it denied his petition for certification to appeal and (2) improperly determined that trial counsel provided effective assistance despite his simultaneous representation of a potential witness and the petitioner, and despite his failure to investigate and call that witness to testify. We dismiss the appeal.

The following facts are relevant to our resolution of this appeal. In May, 1998, Darryl Petitt was beaten and robbed of his money and a watch at gunpoint by two men who were riding in a two-toned car driven by a third man. *State* v. *Vines*, 71 Conn. App. 359, 360, 801 A.2d 918, cert. denied, 261 Conn. 939, 808 A.2d 1134 (2002). Later that same night, the police apprehended the petitioner, Torok Johnson and the petitioner's nephew, Curtis Vines, near a two-toned car matching the description of the one driven by Petitt's attackers. Id., 361. Upon searching the petitioner, the police found some crumpled bills and the watch that was taken from Petitt in the robbery. Id. The police brought Petitt to the scene of the arrest, and he immediately identified the car as the same one driven by his attackers. Id. The petitioner, Johnson, and Curtis Vines were arrested, and the petitioner was charged with four counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2). On the basis of evidence it

obtained after the initial arrest of the petitioner, the state added two counts of tampering with a witness, in violation of General Statutes § 53a-151 (a), to the information already pending against him.

At the petitioner's first trial in May, 1999, the jury found him guilty of two counts of tampering with a witness in violation of § 53a-151 (a), but a mistrial was declared as to the robbery charges because the jury was unable to reach a verdict on those counts. *State v. Vines*, 71 Conn. App. 751, 752, 804 A.2d 877 (2002), aff'd, 268 Conn. 239, 842 A.2d 1086 (2004). The petitioner was retried for the robberies in April, 2000, and found guilty of robbery in the first degree in violation of § 53a-134 (a) (2). *State v. Vines*, supra, 71 Conn. App. 360.

In May, 2003, the petitioner filed an amended petition for a writ of habeas corpus, alleging ineffective assistance of counsel and conflict of interest. In May and July, 2003, a habeas trial was held. At the habeas trial, Hafi Edge testified that on two different occasions in 1998, he was in a holding cell at the Stamford courthouse along with Johnson and the petitioner. He further testified that, while in the holding cell, Johnson told him that "he [Johnson] robbed Darryl Petitt, and a watch was found on him or his cousin . . . . It was him or his cousin, Curtis Vines, and they found the watch on him." Edge testified that Johnson did not say anything about the petitioner's participation in the robbery. He testified that Wayne Keeney, the petitioner's trial counsel, later informed him that the petitioner wanted him to be a witness. Edge claimed that he did not tell Keeney about Johnson because Keeney never asked. On August 13, 2003, the court denied the petition for a writ of habeas corpus. On August 20, 2003, the petitioner filed a petition for certification to appeal, which was denied. This appeal followed. Additional facts will be set forth as necessary.

The petitioner claims that the court abused its discretion when it denied his petition for certification to appeal because his claims of ineffective assistance of counsel warrant appellate review. We disagree.

"Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. . . . If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits." (Citations omitted.) *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994).

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 83 Conn. App. 595, 597, 850 A.2d 1063, cert. denied, 271 Conn. 905, 859 A.2d 560 (2004).

With this standard in mind, we turn to the petitioner's claims on appeal. The petitioner claims that the habeas court improperly determined that his trial counsel provided effective assistance (1) despite his simultaneous representation of a potential witness and the petitioner, and (2) despite his failure to call that witness to testify.

I

The petitioner claims that his trial counsel, Keeney, provided ineffective assistance by continuing to represent him despite a conflict of interest. Specifically, the petitioner claims that at the time of the petitioner's trial, Keeney also represented Edge, a potential witness in the petitioner's case, in another matter.

"Our Supreme Court has established the proof requirements where a habeas corpus petitioner claims ineffective assistance of counsel because of a claimed conflict of interest. Where . . . the defendant claims that his counsel was burdened by an actual conflict of interest . . . the defendant need not establish actual prejudice. . . . Where there is an actual conflict of interest, prejudice is presumed because counsel [has] breach[ed] the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." (Internal quotation marks omitted.) *Myers* v. *Commissioner of Correction*, 68 Conn. App. 31, 34, 789 A.2d 999, cert. denied, 260 Conn. 907, 795 A.2d 545 (2002); see also *Cuyler* v. *Sullivan*, 446 U.S. 335, 349–50, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980).

The petitioner argues that trial counsel had a conflict of interest because he represented both the petitioner and Edge. Specifically, the petitioner argues that the conflict of interest arose because "Edge may have presented testimony that was favorable to [the petitioner] but was fabricated, in which case the petitioner may have benefited but Edge may ultimately have been harmed." The petitioner further argues that "[e]ven if Edge had testified truthfully, were [the petitioner] to be convicted anyway, attorney Keeney opened Hafi Edge to a claim by the prosecutor handling both matters . . . that [the petitioner's] conviction demonstrates that Edge's testimony was perjured and, thus, exposed Edge to the possibility of an additional charge for perjury, or at least a more severe sentence for [his] robbery charges."

The petitioner essentially argues, first, that if Edge testified that he heard Johnson say that the petitioner did not have the victim's watch in his possession at the time of arrest, and if such testimony were untruthful,

then there would be a conflict of interest. In such a situation, Edge's interests would be distinct from the petitioner's interest because Edge could be harmed by being prosecuted for perjury, but the petitioner could possibly benefit from the testimony. The first scenario that the petitioner posits would not occur because counsel has an obligation under rules 1.2 (d) and 3.3 (4) of the Rules of Professional Conduct not to present testimony that he knows to be false. In this situation, it would be in both the petitioner's interest and Edge's interest for Edge not to testify. Keeney testified at the habeas trial that Edge was "a really bad liar." In the first trial, the petitioner was convicted of tampering with a witness, namely, the victim, Petitt, who, at trial, developed a lapse of memory concerning what he previously had told the police about the details of being robbed. As a result, perjured testimony from Edge could have opened the petitioner to more charges of witness tampering. Keeney testified that although all of the tampering evidence from the first trial was admitted in the second trial, calling Edge to testify would have resulted in further repetition of it and to "beat it to death would have been foolish on my part." Providing perjured testimony obviously could not be in Edge's best interest.

Second, the petitioner argues that if Edge had testified truthfully and the petitioner was convicted, Edge possibly would be exposed to unjustified perjury charges or at least a more severe sentence for his robbery charges. We are not persuaded. This scenario presumes improper conduct by prosecutorial officials in initiating prosecution without justification. Furthermore, giving truthful testimony in an unrelated case does not mean that the witness could be sentenced more severely in his own case.

The habeas court noted that Keeney represented both Edge and the petitioner in criminal matters, but that Edge and the petitioner "were not acquainted with each

other," were not codefendants and there was "no connection between the two incidents that led to the charges against each man." The court concluded that there was no actual conflict of interest in Keeney's representation of Edge and the petitioner.

The habeas court found that Keeney declined to call Edge as a witness because he believed that Edge would be a poor witness and had poor credibility, and, because the petitioner had already been convicted of tampering with a witness, which would have allowed the prosecution to raise that issue at the retrial. Keeney testified at the habeas trial that he had determined that Edge would be an unfavorable witness because he "lacked credibility . . . had a surly attitude . . . [and] was monosyllabic in his responses," and he felt that it was not in the petitioner's best interest to call Edge as a witness because the testimony that Edge would have provided would do the petitioner more harm than good. From an investigation of Edge's claims about his own case, Keeney was convinced that Edge "was not credible in the slightest and actually [was] a really bad liar." The habeas court stated in its decision that "at no time did attorney Keeney violate his attorney-client responsibilities in regard to Edge. He simply used what could colloquially be called 'insider knowledge' to avoid a potential impeachment disaster that could have hurt the petitioner at his trial."

The petitioner's conclusion that there existed a conflict of interest because trial counsel represented another defendant, who had been arrested in an unconnected incident, is without merit, nondebatable among jurists of reason, unresolvable in a manner different from that in which it was resolved and inadequate to deserve encouragement to proceed further. See *Dunkley* v. *Commissioner of Correction*, 73 Conn. App. 819, 827–29, 810 A.2d 281 (2002), cert. denied, 262 Conn.

953, 818 A.2d 780 (2003). Accordingly, the claim was unworthy of certification.

## II

The petitioner next claims that trial counsel provided ineffective assistance by failing to investigate the potential testimony of Edge and to call Edge as a witness.[1]

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Goodrum* v. *Commissioner of Correction*, 63 Conn. App. 297, 299, 776 A.2d 461, cert. denied, 258 Conn. 902, 782 A.2d 136 (2001).

"In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both

---

[1] In the petitioner's brief, the statement of the claim is as follows: "III. The trial court, *Fuger, J.,* erred in finding that the petitioner failed to prove that his trial counsel was ineffective in his representation, as due to said trial counsel's failure to investigate offered testimony from potential witness, Darryl Petitt, as well as to present Petitt as a witness, petitioner did not have the opportunity to present testimony from Petitt resulting in actual prejudice to the petitioner." We assume that the petitioner meant to refer to the potential witness, Edge, instead of the victim, Petitt, because the remainder of the argument in that section refers to Edge, as opposed to Petitt, the statement of issues presented for that claim refers to Edge not Petitt, and Petitt testified in both trials.

showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable." (Internal quotation marks omitted.) *Braham* v. *Commissioner of Correction*, 72 Conn. App. 1, 5–6, 804 A.2d 951, cert. denied, 262 Conn. 906, 810 A.2d 271 (2002).

"The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense. Defense counsel will be deemed ineffective only when it is shown that a defendant has informed his attorney of the existence of the witness and that the attorney, without a reasonable investigation and without adequate explanation, failed to call the witness at trial. The reasonableness of an investigation must be evaluated not through hindsight but from the perspective of the attorney when he was conducting it." *State* v. *Talton*, 197 Conn. 280, 297–98, 497 A.2d 35 (1985).

On the basis of his experience, Keeney determined that Edge would not be a favorable trial witness. Keeney stated that he knew, from defending Edge, that he was an "outright liar, and a poor one, in that in his own defense, he had made representations to me that [John McNichols, an investigator for the public defender's office], and I went to great lengths to investigate and determined to be absolutely false." Keeney testified that he did not have an independent investigation conducted with regard to Edge's potential testimony in the petitioner's trial because he already had a certain insight into the potential witness and determined after questioning Edge that he would do more harm for the petitioner's trial than good. Keeney reasoned that prior to trial, he makes his own assessment after speaking with potential witnesses whether to put that person on the witness stand because he is more attuned to the dynamics of the courtroom than an independent investigator.

The habeas court found that there was a sufficient tactical basis for Keeney's decision to avoid calling Edge to testify. The court found that Keeney was convinced that had he called Edge, not only would the petitioner not have been exonerated on the one count of which he was found guilty, but he would have been convicted on the two counts of which he was ultimately acquitted. Keeney explained at the habeas trial that he believed that it was not in the petitioner's best interest to call Edge as a witness. Additionally, we note that police testimony had unequivocally placed the victim's watch on the petitioner's person.

"[T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . ." (Citation omitted.) *Iovieno* v. *Commissioner of Correction*, 67 Conn. App. 126, 128, 786 A.2d 1113 (2001), cert. denied, 259 Conn. 916, 792 A.2d 851 (2002). The petitioner's claim is nondebatable among jurists of reason, unresolvable in a manner different from that in which it was resolved and inadequate to deserve encouragement to proceed further. The habeas court properly denied certification to appeal on this ground of the petitioner's claim.

The appeal is dismissed.

In this opinion the other judges concurred.