NORCOTT, J.
Opinion *672 The petitioner, Alberto Ampero, appeals from the judgment of the habeas court denying, in part, his amended petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the habeas court improperly (1) concluded that his trial counsel provided effective assistance, (2) rejected his claim of actual innocence, and (3) rejected his claim that his due process rights were violated by the use of allegedly perjured testimony. We disagree and, accordingly, affirm the judgment of the habeas court.
The following facts and procedural history are relevant to the disposition of the petitioner's claims.[2] On August 27, 2009, the petitioner forced the victim and her three children to enter an apartment building and, after allowing them to leave the following morning, fled on foot from pursuing police. State v. Ampero , 144 Conn.App. 706, 708-12, 72 A.3d 435, cert. denied, 310 Conn. 914, 76 A.3d 631 (2013). During the course of the night, the petitioner also grabbed the victim by her neck, choked her and left marks on her neck. Id. at 710, 72 A.3d 435. The state charged the petitioner with kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), kidnapping in the second degree in violation *673 of General Statutes § 53a-94 (a), strangulation in the second degree in violation of General Statutes § 53a-64bb, and interfering with an officer in violation of General Statutes § 53a-167a. Following a jury trial, the petitioner was found guilty of kidnapping in the second degree and interfering with an officer.[3] Id., at 712, 72 A.3d 435. He was found not guilty of the remaining charges. This court affirmed the petitioner's convictions on direct appeal. Id. at 708, 72 A.3d 435.
On May 5, 2014, the petitioner filed the operative three count second amended petition for a writ of habeas corpus. In it, the petitioner alleged ineffective assistance of his trial counsel,[4] R. Bruce Lorenzen, at trial, that he was actually innocent, and that his due process rights were violated *1198 due to the use of perjured testimony. After a two day habeas trial in December, 2014, the habeas court issued a memorandum of decision denying, in part, the petitioner's petition for a writ of habeas corpus. This appeal followed. Additional facts will be set forth as necessary.
I
The petitioner first claims that the habeas court improperly concluded that Lorenzen provided effective assistance of counsel. Specifically, he argues that his counsel was deficient by failing (1) to request limiting *674 instructions regarding the introduction of prior misconduct evidence; (2) to present exculpatory evidence, namely, a tape of the victim's mother's 911 call, which allegedly would have undermined her trial testimony; and (3) to present exculpatory witnesses who could impeach the victim's testimony that she was not involved in a romantic relationship with the petitioner during the summer of 2009, when the incident occurred. The respondent, the Commissioner of Correction, argues that the habeas court properly denied the second amended petition because the petitioner's claim of ineffective assistance of counsel overlooks "the fact that counsel's overall performance, which resulted in a finding of not guilty as to two of the four charges faced by the petitioner, indicates that counsel rendered effective and capable advocacy" and fails to afford "the proper level of deference to counsel's strategic decisions ... [in] an attempt to second-guess counsel's trial tactics after an adverse result." We agree with the respondent and affirm the court's determination that the petitioner's trial counsel provided effective assistance.
We begin by setting forth our standard of review. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous.... The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Internal quotation marks omitted.) Horn v. Commissioner of Correction , 321 Conn. 767, 775, 138 A.3d 908 (2016).
The legal principles that govern an ineffective assistance claim are well settled. See Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong ... the petitioner must demonstrate that his attorney's *675 representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law....
"The second prong is ... satisfied if the petitioner can demonstrate that there is a reasonable probability that, but for that ineffectiveness, the outcome would have been different." (Citation omitted; internal quotation marks omitted.) Horn v. Commissioner of Correction , supra, 321 Conn. at 775-76, 138 A.3d 908.
Regarding the performance prong, "[j]udicial scrutiny of counsel's performance must be highly deferential.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged *1199 action might be considered a sound trial strategy." (Internal quotation marks omitted.) Spearman v. Commissioner of Correction , 164 Conn.App. 530, 539, 138 A.3d 378, cert. denied, 321 Conn. 923, 138 A.3d 284 (2016).
A petitioner must prevail on both Strickland prongs. Lewis v. Commissioner of Correction , 165 Conn.App. 411, 451, 139 A.3d 759, cert. denied, 322 Conn. 901, 138 A.3d 931 (2016). Put differently, "[i]t is axiomatic that courts may decide against a petitioner on either prong, whichever is easier." Id.
A
The petitioner first argues that Lorenzen provided ineffective assistance of counsel by failing to request *676 limiting instructions regarding the introduction of evidence of prior misconduct that occurred during the relationship between the petitioner and the victim. The respondent, in turn, argues that the habeas court did not err in concluding that counsel exercised a reasonable trial strategy in not seeking a limiting instruction. We conclude that the petitioner cannot prove prejudice, and, therefore, the habeas court did not err in its determination that Lorenzen did not provide ineffective assistance of counsel.
"Proper limiting instructions often mitigate the prejudicial impact of evidence of prior misconduct." State v. Ryan , 182 Conn. 335, 338 n.5, 438 A.2d 107 (1980). The petitioner argues that prior misconduct testimony was "pervasive throughout the trial" and a limiting instruction should have been given. Specifically, he notes that when the victim testified about her April, 2009 breakup with him, she described how the petitioner took both of her cell phones and broke them in half and slapped her in the face.[5] The victim and her mother testified that, after that incident, her mother called the police, and the petitioner was subsequently arrested. A no contact order between the victim and the petitioner was imposed as a condition of his subsequent probation. The petitioner also notes that the victim's mother testified that the victim "was scared of [the petitioner].... He ... had been in jail." Officer John Zweibelson, the lead investigator in the April, 2009 incident, testified that during that incident he had seized a lighter that he initially thought was a gun.[6] Finally, responding Officer Robert Quaglini testified: "Well, we *677 got [the petitioner's] name, date of birth, and we were able to pull up a picture-his [Department of Correction] picture on the computer within the cruiser." The petitioner claims that this information "clearly inform[ed] the jury that [the petitioner] ha[d] been previously arrested, convicted, and sentenced" and that "the jury was then aware that the subject conviction involved the [victim]."
The petitioner argues that the use of such prior misconduct evidence was "inherently prejudicial" and necessitated a limiting instruction. He misapprehends our holding in State v. Huckabee , 41 Conn.App. 565, 574, 677 A.2d 452, cert. denied, 239 Conn. 903, 682 A.2d 1009 (1996), for the proposition that trial counsel must request a limiting instruction when prior misconduct evidence is presented, and, as a result, *1200 that failing to request one was per se prejudicial for the purposes of an ineffective assistance of counsel claim. In Huckabee , this court determined that the state's introduction of evidence of a defendant's prior escapes from a juvenile detention center was proper after the defendant "opened the door to such inquiry," but that the "introduction of the ... escapes prior to this prosecution, however, should have been accompanied by a limiting instruction that the evidence was to be used solely for the purpose of evaluating the defendant's veracity" and that the "nature of this evidence ... requires a limiting instruction." Id. The petitioner fails to recognize, however, that in Huckabee , which was a direct criminal appeal, not a habeas action, the defendant raised an evidentiary claim that required him to prove that it was "reasonably probable that the jury was misled by the failure to give a limiting instruction." Id. at 575, 677 A.2d 452. Here, the petitioner is not making an evidentiary claim. Rather, he is claiming that Lorenzen provided ineffective assistance of counsel and that claim requires a standard different from the claim in Huckabee . Instead of *678 determining whether it was "reasonably probable that the jury was misled" by the lack of a limiting instruction, we are charged with the two prong Strickland standard and may decide the matter against the petitioner on either the performance or the prejudice prong. Lewis v. Commissioner of Correction , supra, 165 Conn.App. at 451, 139 A.3d 759.
In the present case, we conclude that the petitioner's claim fails because the state's case against the petitioner was strong and thus the petitioner cannot demonstrate prejudice. There is no reasonable probability that, had evidence of the petitioner's prior misconduct not been introduced, or had its introduction been properly limited, the outcome of the trial would have been different. A reasonable jury could have found the petitioner guilty on the basis of the other, non-prior misconduct evidence presented at trial even if the evidence of the petitioner's prior misconduct was not introduced or was properly limited.
Quaglini testified that he and Officer Robert Iovanna, the other responding officer, went to 104 Ward Street in search of the petitioner after interviewing the victim and observed the petitioner standing on the front steps. Upon approaching the petitioner, the petitioner "made eye contact and he immediately spun around [and] ripped the door open." Quaglini stated that he ordered the petitioner to stop, but the petitioner did not comply and instead "ran up the stairs." Quaglini "chased him up the stairs into the apartment, ran through the apartment down the back stairs out of the back of the house [and] ran back around to Ward Street." Quaglini further testified that the petitioner was "hopping fences" and running through backyards in an effort to evade him. Quaglini followed him to a parking lot located at 913 Broad Street and found the petitioner hiding under a motor vehicle.
*679 A struggle ensued. The officers attempted to pull the petitioner out by the feet, but they had to strike him with Quaglini's baton in order to extract him and place him in handcuffs. Zweibelson then transported the victim to the scene to identify the petitioner. Zweibelson testified that, when he arrived with the victim, the petitioner, without prompting, "stated that he didn't do it and that he just wanted ... to be with her and that ... they did have a verbal argument, altercation that night over ... the state of the relationship." Further, Officer John Hernandez, another responding police officer, testified that he observed injuries to the victim, including bruising to her neck.
*1201 Therefore, the physical evidence of the bruises on the victim's neck and the petitioner's own actions and statements made the state's case strong. Moreover, fleeing from police could be considered evidence of consciousness of guilt. State v. Fagan , 280 Conn. 69, 82, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S.Ct. 1491, 167 L.Ed.2d 236 (2007). The petitioner's unsolicited statements that "he didn't do it" and that he "just wanted to be" with the victim further serve as circumstantial evidence that the petitioner did, in fact, commit a crime against the victim.
Due to the strength of the state's case, we conclude that the petitioner was not prejudiced by the lack of a limiting instruction following the introduction of the evidence of his prior misconduct, and thus agree with the habeas court that the petitioner was not denied effective assistance of counsel.
B
The petitioner next argues that Lorenzen provided ineffective assistance of counsel by failing to produce and to present exculpatory evidence, namely, a tape of the victim's mother's 911 call. According to the petitioner, the 911 tape would have undermined the mother's *680 testimony because of the discrepancies between her testimony and the actual 911 tape. The respondent argues that because the petitioner never asked Lorenzen about the 911 tape during the habeas trial, the petitioner failed to satisfy his burden of proof with respect to this claim of ineffective assistance of counsel. The court concluded that, due to the absence of any evidence that would explain why Lorenzen did not use the tape, the petitioner failed to meet his burden of proof. We agree with the court and reject the petitioner's claim.
The following additional facts are relevant to our discussion. At trial, the victim's mother testified to the following: "I told the police that I had a big argument with my daughter and that it was so big that she got so upset she left the house. I didn't know what to do. I needed them to come home immediately because the fight was so big I don't know-I didn't understand what-where-where it was going to, but the police didn't believe me." Additionally, she testified that "I was trying to talk low, and they kept telling me you have to speak louder, and I told them I couldn't do that ... I think that's what ... got them to come so fast." The petitioner argues in his brief that a review of the 911 tape recording of the conversation between the victim's mother and the dispatcher "reveals that the [victim's] mother did not request that the police come to her house, instead she told them everything was fine. Further, the dispatcher did not 'keep telling' the [victim's] mother to 'speak louder.' To the contrary, at no point did the dispatcher tell the [victim's] mother to 'speak louder.' " (Emphasis original.) He further emphasizes that the victim's mother testified that the police arrived at her house " 'less than five minutes' " after she terminated the 911 call, but that the Heartbeat Dispatch Summary indicates that the police did not arrive at the victim's mother's residence until an hour and a half after the call.
*681 The habeas court found that "[a]t the habeas trial, Attorney Lorenzen was not asked whether he obtained or listened to the 911 [tape] prior to or during the criminal trial, or if he did have it, why he did not use it to cross-examine the victim's mother." Despite the respondent's argument to the contrary, a petitioner is not always required to call counsel at his habeas trial to present evidence to explain counsel's strategy on appeal. See Eubanks v. Commissioner of Correction , 166 Conn.App. 1, 13, 140 A.3d 402 (2016) (trial counsel's *1202 testimony regarding strategy not necessary to prove ineffectiveness). Nevertheless, we agree with the habeas court's conclusion that the petitioner failed to meet his burden of proof.
We are persuaded that the petitioner failed to prove that Lorenzen's performance fell below an objective standard of reasonableness. Lorenzen did, in fact, utilize the discrepancy between the amount of time that the victim's mother testified that it took the police to arrive at her residence and their actual arrival time to impeach the victim's mother at trial. Specifically, Lorenzen elicited testimony from Zweibelson that directly contradicted part of the victim's mother's testimony regarding her call to the police. Moreover, during his thorough cross-examination of the victim's mother, Lorenzen elicited testimony that she had lied to the police. The petitioner argues in his brief that "[e]ffective assistance would have thus required that defense counsel utilize the [911] recording as impeachment," but he also admits that Lorenzen did just that at trial. Thus, the petitioner has failed to demonstrate how he was harmed by counsel's failure to offer the 911 tape, as it is clear Lorenzen was effective in impeaching the victim's mother's testimony without it. " Strickland does not guarantee perfect representation, only a reasonably competent attorney. ... Representation is constitutionally ineffective only if it so undermined the proper functioning of the adversarial process that the defendant was denied a fair trial."
*682 Citations omitted, internal quotation marks omitted.) Harrington v. Richter , 562 U.S. 86, 110, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). For the foregoing reasons, Lorenzen's conduct cannot be said to be so deficient that it "undermined the proper functioning of the adversarial process." Id.
We conclude that Lorenzen was effective in impeaching the testimony of the victim's mother about the 911 call and, without any evidence regarding why Lorenzen was deficient for not seeking to admit the 911 tape, we reject the petitioner's ineffective assistance claim because he has failed to overcome the presumption that his counsel's actions were part of a sound trial strategy.
C
Finally, the petitioner argues that Lorenzen provided ineffective assistance by failing to present witnesses by way of the victim's telephone records to establish that, contrary to the victim's testimony, the petitioner was in a romantic relationship with the victim during the summer of 2009, when the incident occurred. The respondent replies that the habeas court properly resolved the foregoing claim on the basis of a credibility determination that the petitioner had failed to provide Lorenzen with names of witnesses he alleges Lorenzen should have called. We agree with the respondent and, accordingly, reject the petitioner's argument.
The following additional facts are necessary for the resolution of this argument. During the underlying criminal trial, the victim testified that she and the petitioner were not in a romantic relationship during the summer of 2009, that they had no physical contact with each other, and that she feared the petitioner. At the habeas trial, Mario Negron, Maria Sepuoveda, Norma Garcia, Gabriel Ampero, Anthony Sanchez, Ramon Rosado,[7] *683 and Celestino *1203 Gonzalez[8] testified for the petitioner.[9] The petitioner argues that if Lorenzen had presented the foregoing witnesses' testimony at trial, their testimony would have contradicted the victim's testimony that she was not in a romantic relationship with the petitioner during the summer of 2009, and, as a result, Lorenzen's failure to call them amounted to ineffective assistance of counsel.[10] The habeas court found that the testimony of these witnesses was not credible.[11] *684 "The reasonableness of an investigation must be evaluated not through hindsight but from the perspective of the attorney when he was conducting it." (Internal quotation marks omitted.) *1204 Vines v. Commissioner of Correction , 94 Conn.App. 288, 296, 892 A.2d 312, cert. denied, 278 Conn. 922, 901 A.2d 1222 (2006). After reviewing a copy of the police report, the petitioner informed Lorenzen that the victim's statement that she and the petitioner were not in a romantic relationship in the summer of 2009 was a lie. Lorenzen testified at the habeas trial that the petitioner had not provided him with any of the above witness names prior to the criminal trial. During the pretrial investigation, the petitioner provided Lorenzen with the names of only two witnesses, Nancy Gonzalez and Melania Alverez, to testify that he and the victim were in a romantic relationship. Lorenzen was unable to locate them. The habeas court determined that the petitioner, "who knew or should have known of these other witnesses, failed to tell [Lorenzen] about them." *685 "Defense counsel will be deemed ineffective only when it is shown that a defendant has informed his attorney of the existence of the witness and that the attorney, without a reasonable investigation and without adequate explanation, failed to call the witness at trial." Gaines v. Commissioner of Correction , 306 Conn. 664, 681, 51 A.3d 948 (2012). "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." Strickland v. Washington , supra, 466 U.S. at 691, 104 S.Ct. 2052. "The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." (Internal quotation marks omitted.) Vines v. Commissioner of Correction , supra, 94 Conn.App. at 296, 892 A.2d 312.
In the present case, the petitioner argues that he informed Lorenzen that the victim's telephone records could provide exculpatory or impeachment evidence and that he requested that Lorenzen obtain such records. Lorenzen did subpoena the phone records, but he did not receive them until after the petitioner was convicted, at which point he filed a motion for a new trial.[12] The petitioner never set forth any of the names, however, that could have been discovered through the phone records during his pretrial discovery. Moreover, the one witness that was known to the petitioner and Lorenzen at the outset of trial, Gonzalez, could not be located despite extensive efforts of both Lorenzen and the state. Accordingly, we agree with the habeas court that the petitioner has failed to prove that Lorenzen's *686 conduct was deficient in failing to procure the previously mentioned witnesses.
II
The petitioner next claims that the habeas court improperly rejected his claim of actual innocence. According to the petitioner, if the witnesses he alleged should have been presented at his criminal trial had testified, their testimony would have demonstrated that the victim had been living with him at the time that she alleged she was kidnapped. The respondent argues that the habeas court, in its role as fact finder, properly rejected the petitioner's claim of actual innocence because the petitioner's evidence was insufficient to meet the high burden of proving his actual innocence by clear and convincing evidence. We agree with the respondent, and, accordingly, *1205 reject the petitioner's claim of actual innocence for two reasons; first, the witnesses presented at the habeas trial did not constitute newly discovered evidence, and second, the petitioner does not satisfy the high standard for a claim of proof of actual innocence.
We begin our analysis by setting forth the relevant legal principles and standard of review that governs our analysis. "To prevail [on a claim of actual innocence], a petitioner must satisfy two criteria. First, [he] must establish by clear and convincing evidence that, taking into account all of the evidence-both the evidence adduced at the original criminal trial and the evidence adduced at the habeas corpus trial-he is actually innocent of the crime of which he stands convicted. Second, [he] must also establish that, after considering all of that evidence and the inferences drawn therefrom as the habeas court did, no reasonable fact finder would find the petitioner guilty of the crime....
"With respect to the first component of the petitioner's burden, namely, the factual finding of actual innocence by clear and convincing evidence ... [t]he *687 appropriate scope of review is whether, after an independent and scrupulous examination of the entire record, we are convinced that the finding of the habeas court that the petitioner is [not] actually innocent is supported by substantial evidence.... We have stated that the clear and convincing standard should operate as a weighty caution upon the minds of all judges, and it forbids relief whenever the evidence is loose, equivocal or contradictory." (Citations omitted; internal quotation marks omitted.) Corbett v. Commissioner of Correction , 133 Conn.App. 310, 314-15, 34 A.3d 1046 (2012).
"[A] claim of actual innocence must be based on newly discovered evidence. ... This evidentiary burden is satisfied if a petitioner can demonstrate, by a preponderance of the evidence, that the proffered evidence could not have been discovered prior to the petitioner's criminal trial by the exercise of due diligence." (Internal quotation marks omitted.) Vazquez v. Commissioner of Correction , 128 Conn.App. 425, 444, 17 A.3d 1089, cert. denied, 301 Conn. 926, 22 A.3d 1277 (2011).
Moreover, actual innocence must be proven by "affirmative proof that the petitioner did not commit the crime." Gould v. Commissioner of Correction , 301 Conn. 544, 561, 22 A.3d 1196 (2011). "Affirmative proof of actual innocence is that which might tend to establish that the petitioner could not have committed the crime even though it is unknown who committed the crime, that a third party committed the crime or that no crime actually occurred." (Emphasis in original.) Id. at 563, 22 A.3d 1196.
In the present case, the petitioner argues that his claim of actual innocence is supported by substantial evidence, namely, the testimony of his habeas witnesses who testified about the alleged relationship between the petitioner and the victim.
*688 The court, after reviewing the evidence before it, concluded that the testimony of the petitioner's witnesses did not prove by clear and convincing evidence that the petitioner is actually innocent of the crimes of which he is convicted. First, the habeas court found that this evidence was not newly discovered because the petitioner's witnesses were known, or should have been known to him, at the time of the petitioner's criminal trial. Second, the court found that these witnesses were not exculpatory, as none of them witnessed the events at issue on August 27 and 28, 2009. To support this conclusion, the court observed that "[o]nly [Gonzalez] was present *1206 in the house that night but he only provided limited testimony concerning the events of the evening and his testimony does not prove that the petitioner is actually innocent, nor does it undermine the victim's testimony about the events."
Upon a thorough review of the record, we conclude that Gonzalez' testimony does not directly contradict the victim's testimony. Gonzalez testified that although he did not see the petitioner use force on the victim, she ran into his room at 4 a.m. and stated "please help me, [the petitioner] won't let me go home." He also testified that the petitioner refused to give the victim's baby back to her. Thus, Gonzalez' testimony could support a finding that the petitioner was holding her against her will.
The petitioner further argues that the elements of kidnapping cannot be met here, and that "by law, [the petitioner] is actually innocent of kidnapping in the second degree." Again, we disagree.
General Statutes § 53a-94 (a) provides that "[a] person is guilty of kidnapping in the second degree when he abducts another person." " 'Abduct' " means "to restrain a person with intent to prevent his liberation by either (A) secreting or holding him in a place where *689 he is not likely to be found, or (B) using or threatening to use physical force or intimidation." General Statutes § 53a-91 (2). Here, the victim's words coupled with evidence that the petitioner refused to give her back her baby is enough to constitute abduction in the form of "intimidation." The habeas court was well within its power as fact finder to conclude that Gonzalez' testimony, and that of all the other witnesses who testified at the habeas trial, did not present clear and convincing evidence of the petitioner's actual innocence. Moreover, our review of the record demonstrates that the evidence before the habeas court was, at the least, "loose, equivocal or contradictory," from which no habeas relief can exist.
On the basis of the record before us, we agree with the habeas court that the petitioner has failed to establish by clear and convincing evidence that he is actually innocent because he has failed to produce new evidence at his habeas trial and has not met the high burden of proof necessary to sustain a claim of actual innocence.[13]
*690 *1207 Corbett v. Commissioner of Correction , supra, 133 Conn.App. at 314-15, 34 A.3d 1046 ; Vazquez v. Commissioner of Correction , supra, 128 Conn.App. at 444, 17 A.3d 1089.
III
The petitioner's final claim is that the habeas court improperly concluded that his due process rights were not violated because his conviction was based, in part, on the allegedly perjured testimony of the victim and the victim's mother. Specifically, the petitioner argues that the habeas court's determination that he "ha[d] not proved that the victim of her mother committed perjury during his criminal trial" was clearly erroneous. We disagree.
We first set forth our standard of review. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous."[14] (Internal quotation marks *691 omitted.) Taylor v. Commissioner of Correction , 284 Conn. 433, 448, 936 A.2d 611 (2007). "When the factual basis of the court's decision is attacked, [w]e are called upon to determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous.... Our function is not to examine the record to see if the trier of fact could have reached a contrary conclusion." (Internal quotation marks omitted.) Walker v. Commissioner of Correction , 103 Conn.App. 485, 498-99, 930 A.2d 65, cert. denied, 284 Conn. 940, 937 A.2d 698 (2007).
We conclude that the habeas court's findings with respect to the testimony of *1208 the victim and the victim's mother are supported by the record and are not clearly erroneous. Although the court did not articulate why it found that the petitioner had not proven that the victim or her mother committed perjury during his criminal trial, there is ample evidence in the record to support the veracity of their testimony.
General Statutes § 53a-156 (a) provides in relevant part that "[a] person is guilty of perjury if, in any official proceeding, such person intentionally, under oath ... makes a false statement, swears, affirms or testifies *692 falsely, to a material statement which such person does not believe to be true." Thus, the petitioner had to prove that the victim and the victim's mother intentionally testified falsely to a material statement that they did not believe to be true. There is insufficient evidence in the record to support the petitioner's claim.
The petitioner argues that the victim testified falsely when she stated she was not in a romantic relationship with the petitioner prior to the kidnapping, and to specific events surrounding the kidnapping itself. The petitioner claims that Gonzalez' testimony at the habeas trial "directly contradict[s] the [victim's] testimony ...." As previously stated, however, Gonzalez' testimony does not contradict the victims' testimony that the petitioner threatened her by refusing to give her baby back and that the petitioner would not "let [her] go home." Accordingly, the court was within its discretion as fact finder to discredit the testimony of the petitioner's numerous habeas witnesses that spoke to the existence of a romantic relationship between the petitioner and the victim in the summer of 2009.[15] The petitioner has not presented any other evidence to prove that the victim's testimony was intentionally false or that she did not believe her statements to be true.
Further, the petitioner argues that the victim's mother perjured herself in regard to the 911 tape because there were discrepancies between the audio recording and her testimony describing the call as to her tone of voice, the timing regarding how soon the police officers arrived to her residence, and whether the officers spoke with the petitioner on the cell phone of the victim's *693 mother after arriving at her residence. Mere discrepancies in testimony, however, are insufficient for a finding of perjury. State v. Singh , 259 Conn. 693, 708, 793 A.2d 226 (2002) ("[a] witness' testimony ... can be unconvincing or wholly or partially incorrect for a number of reasons without any deliberate misrepresentation being involved ... such as misrecollection, failure of recollection or other innocent reason" [citation omitted; internal quotation marks omitted] ). Ultimately, the habeas court acted well within its discretion in finding that "[e]ven if the [testimony of the] victim's [mother] ... regarding the call had been discredited, this could not have discredited the victim's testimony that she had been kidnapped and [had] lied to her mother because the petitioner forced her to do so." Thus, we disagree with the petitioner's argument that but for the previously alleged perjured testimony, he would not have been convicted. "[T]he fact that there is support in the record for a different conclusion is irrelevant at this stage in the judicial process. As we have noted, we do not review the evidence to determine whether a conclusion *1209 different from the one reached could have been reached. We review the totality of the evidence, including reasonable inferences therefrom, to determine whether it could support the trier's decision.... We conclude that it does." (Citation omitted.) Walker v. Commissioner of Correction , supra, 103 Conn.App. at 500, 930 A.2d 65.
For all the foregoing reasons, we conclude that the habeas court properly denied the petitioner's petition for a writ of habeas corpus.
The judgment is affirmed.
In this opinion the other judges concurred.

In its memorandum of decision denying the petitioner's petition, the habeas court granted the petitioner's claim for presentence credit of three days, but it denied the remainder of his claims. The court subsequently granted the petitioner's petition for certification to appeal. See General Statutes § 52-470 (g).

The facts underlying the petitioner's conviction are fully set forth by this court in State v. Ampero, 144 Conn.App. 706, 708-12, 72 A.3d 435, cert. denied, 310 Conn. 914, 76 A.3d 631 (2013). Accordingly, we need not repeat the entirety of them here.

"On the charge of kidnapping in the second degree, the court sentenced the [petitioner] to twenty years of incarceration, suspended after ten years, followed by five years of probation. On the charge of interfering with an officer, the court sentenced the [petitioner] to one year of incarceration, to be served concurrently with his sentence for kidnapping in the second degree." State v. Ampero, supra, 144 Conn.App. at 712, 72 A.3d 435.

The petitioner alleged in the first count of the second amended petition that trial counsel rendered ineffective assistance in ten ways. On appeal, however, the petitioner alleges only that trial counsel was ineffective when he failed (1) to request limiting instructions regarding prior misconduct, (2) to present exculpatory evidence; and (3) to present exculpatory witnesses. We review only those claims presented on appeal.

The victim also referenced a separate alleged altercation in which the petitioner called her, threatened her, and followed her in his car.

The petitioner alleges in his brief that Zweibelson testified that he "previously arrested" the petitioner; however, a review of the trial transcripts reveals no such testimony. Specifically, Zwiebelson testified that he "apprehended" the petitioner, but the petitioner never developed the record further to explain what "apprehended" meant.

No allegation concerning Rosado is contained in the operative habeas petition, and, therefore, we do not address whether Lorenzen's failure to call Rosado constitutes a basis for habeas relief. Cole v. Commissioner of Correction, 102 Conn.App. 595, 599-600, 925 A.2d 1231 (holding that habeas court lacks authority to grant relief on claim not contained in operative petition), cert. denied, 284 Conn. 924, 933 A.2d 723 (2007).

Lorenzen testified that although Gonzalez, the petitioner's downstairs neighbor at the time of the incident, was identified in the discovery materials as a potential witness, he was unable to locate him to testify at the petitioner's trial. The habeas court found that Gonzalez testified that the "petitioner lived on the second floor of his residence in August, 2009. He testified that he did not hear anything during the day on August 27, 2009. After he went to bed at 9 p.m., he was awoken at 4 a.m. by the victim who ran into his room and said that the petitioner would not let her go home. [He] testified that he heard the petitioner say she could leave but she would have to leave the child because it was dangerous at that time of night. He also testified that the petitioner was not restraining the victim or holding her child, and that the petitioner said a safe time for them to leave would be in the morning. The victim then left around 8 a.m. after cooking breakfast."

The petitioner refers to the foregoing witnesses as "exculpatory witnesses," however, none of the testimony, aside from that of Gonzalez, was offered to show actual innocence. Instead, the basis of the offered testimony was to impeach the victim's testimony that the petitioner and the victim were not in a romantic relationship during the summer of 2009.

At the habeas trial, the petitioner argued that Lorenzen provided ineffective assistance of counsel by failing to call Negron, Sepuoveda, Garcia, and Rosado as witnesses for the underlying criminal trial to testify about the relationship between the petitioner and the victim, Gabriel Ampero and his wife at the sentencing, and by failing to call Gonzalez at the underlying criminal trial to testify about the events that occurred. However, the petitioner does not separate the witnesses in such a manner on appeal, and, thus, we will address his claim as being the failure to call them at the underlying criminal trial.

The habeas court found that "[d]uring the habeas trial, Negron, Sepuoveda, Garcia, and Rosado testified that they had seen the petitioner and the victim together on a couple of occasions during the summer of 2009, that they did not witness any violence or fighting between them, and that they had not been contacted to testify at the petitioner's trial but were available. None of these witnesses ... witness[ed] any of the events of the kidnapping." It further noted in a footnote that "it is not evident that the testimony of any of these witnesses would have been helpful to the defense. Negron testified that he was good friends with the petitioner but did not know the petitioner's name. Sepuoveda was Negron's girlfriend and only knew the petitioner through Negron. Garcia was Sepuoveda's mother and did not recognize the names of either the victim or the petitioner when first contacted by an investigator. None of the witnesses testified regarding specific dates that they saw the petitioner and the victim together, and none of them saw either the petitioner or the victim on August 27, 2009, or August 28, 2009." According to the habeas court's memorandum of decision, Gabriel Ampero admitted on cross-examination that he had been "convicted of multiple felonies, that one of [those] felonies resulted from an arrest with the petitioner, that in 2009 he was using illegal drugs, that he is a schizophrenic, and that he [had] never met the victim in person." The habeas court did not incorporate into its memorandum the testimony of Sanchez, the victim's former boyfriend, who testified that the victim was not a truthful person and that in two instances, the victim made false allegations of abuse against him.

The petitioner's motion for a new trial was denied on February 17, 2011.

The petitioner argues, in the alternative, that his claim of actual innocence be accompanied by an assertion of constitutional error at trial, in that allegedly false testimony was presented in violation of his due process rights. He requests that his claim of actual innocence be evaluated under the standard delineated in Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), in which the United States Supreme Court carved out a special standard of review applicable when a procedurally defaulted habeas petitioner asserts a claim of actual innocence in order to circumvent the procedural bar to the consideration of the merits of a constitutional claim. The Supreme Court held that a habeas petitioner may avoid the procedural bar that applies to successive habeas petitions by proving that "it is more likely than not that no reasonable juror would have convicted him in light of ... new evidence." Id. at 327, 115 S.Ct. 851.
"There are two types of actual innocence claims: gateway and freestanding. In a freestanding claim of actual innocence, 'there is no claim of an antecedent constitutional violation that affected the result of [the] criminal trial. Such a freestanding claim is to be contrasted with what has come to be known in federal habeas jurisprudence as a "gateway" claim of actual innocence. Such a claim serves as a gateway to permit federal habeas review of an otherwise procedurally barred state conviction that the petitioner asserts is constitutionally flawed'; Miller v. Commissioner of Correction, 242 Conn. 745, 788 n.28, 700 A.2d 1108 (1997) ; it is '[a] claim based on an antecedent constitutional violation that affects the results of the criminal trial ....' Id., at 813, 700 A.2d 1108 n.7 (Berdon, J., concurring and dissenting)." Rivera v. Commissioner of Correction, 70 Conn.App. 452, 461 n.2, 800 A.2d 1194, cert. denied, 261 Conn. 921, 806 A.2d 1061 (2002).
We decline to evaluate the petitioner's actual innocence claim under the Schlup standard as that standard is inapposite. See Rivera v. Commissioner of Correction, supra, 70 Conn.App. at 461, 800 A.2d 1194 ("[n]either this Court nor our Supreme Court has expressly recognized the viability of a [Schlup ] gateway claim of actual innocence in this state"). Schlup applies only to "gateway" claims of actual innocence, not freestanding claims such as the one that the petitioner is making here. Even if we were reviewing a procedurally barred claim here, which we are not, the petitioner would not prevail under the "gateway" analysis as a gateway claim of actual innocence "does not by itself provide a basis for relief"; Schlup v. Delo, supra, 513 U.S. at 314, 115 S.Ct. 851 ; but instead merely removes the procedural bar in order to evaluate the merits of the underlying claim. Rivera v. Commissioner of Correction, supra, at 461-62, 800 A.2d 1194. In the present case, the petitioner was not confronted with any procedural impediments to the review of his due process claim, and, indeed, the habeas court and this court have fully addressed the merits of that claim. The petitioner was therefore in no need of a "gateway."

In their respective briefs, the petitioner and the respondent dedicate a large section to reference case law regarding a conviction obtained with the state's knowledge of perjured testimony, in that the use of such testimony violates due process rights only if the testimony was material and the court is left with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted. Connecticut case law recognizes, as a basis for habeas relief, that the state's knowing use of perjured testimony can violate due process. Gould v. Commissioner of Correction, supra, 301 Conn. at 570 n.18, 22 A.3d 1196. The majority approach requires that when raising this claim, a petitioner must prove that the state had knowledge of the testimony's falsity when it was presented, while the minority approach holds that, regardless of knowledge, perjured testimony alone can give rise to a due process claim in a habeas context. Connecticut has not adopted either approach as of yet. See id., at 570-71, 22 A.3d 1196 n.18. We need not evaluate whether the majority or minority approach should apply here, as the habeas court was well within its power in determining that the petitioner had not proved that the victim or her mother committed perjury during his criminal trial.

The habeas court made factual determinations in its memorandum of decision that the testimony of the petitioner's witnesses was not credible as each witness either could not remember any of the specific dates they mentioned or their testimony was inconsistent with other witness' testimony.